[Crim. No. 2880. In Bank.—July 28, 1926.]

## THE PEOPLE, Respondent, v. D. B. HOFFMAN, Appellant.

[1] CRIMINAL LAW—MURDER—IMPEACHMENT OF WITNESS—JUVENILE COURT RECORD—MISCONDUCT OF TRIAL JUDGE.—In a prosecution for murder, the record of a juvenile court showing that a witness for the prosecution had previously entered a plea of guilty in said court to a charge of grand larceny is not admissible for purposes of impeachment; and, therefore, the error, if any, of the trial court in expressing some doubt as to the admissibility of such a record for impeachment purposes and stating "I don't think it is very important. To save time I think it may be admitted," cannot be held to be prejudicial.

[2] ID.—JUSTIFIABLE HOMICIDE—VOIR DIRE EXAMINATION OF JURORS—CHALLENGE FOR CAUSE.—In a prosecution for murder, where the killing is admitted but is claimed to have been in self-defense, it is not error to deny a challenge for cause directed at a prospective juror who states, during his examination on *voir dire,* that he is of the opinion that defendant killed the decedent and that it will require evidence to remove such opinion.

[3] ID.—SELECTION OF JURORS—METHOD OF EXCUSAL—APPEAL—ASSUMPTION.—Where the record on appeal shows that the name of a certain person was drawn from the jury-box as a prospective juror, when it was ascertained that he was not, at the time, in the courtroom, that other names were then drawn from the box sufficient to temporarily complete the jury, that said person subsequently returned to the courtroom and, over the objection of defendant, without a return of his name to the box and a re-drawing therefrom, was seated in the place of an excused juror and examined, and that he was not among those who finally sat in the case, but the record does not show by what method he was excused, the appellate court must assume that he was either excused for cause or upon a peremptory challenge of the prosecution.

[4] ID. — REPUTATION OF DEFENDANT FOR PEACE AND QUIET — EVIDENCE—ERROR WITHOUT PREJUDICE.—In this prosecution for murder, the trial court erred in striking out the testimony of certain character witnesses for the defendant who testified to the good reputation of the defendant for peace and quiet in the community in which he resided, although such witnesses, on cross-examination, admitted they had never discussed defendant's reputation with anyone or heard it discussed and further admitted that their testi-

---

4. See 8 Cal. Jur. 56; 8 R. C. L. 211.

mony represented their personal opinion of the defendant for the enumerated traits; but such error was not prejudicial to the defendant where he offered and had admitted the testimony of seven other character witnesses, and the state did not produce an equal number of witnesses who testified to the contrary.

[5] Id — Prior Use of Gun — Proper Cross-examination of Defendant.—In this prosecution for murder, defendant having taken the stand on his own behalf and his counsel having asked him if, except for the matter which was the subject of the trial, he had ever had any trouble or difficulty with anybody whomsoever, or if he had ever been charged with any offense whatsoever, it was not error, on cross-examination and over the objection of defendant's counsel, to permit the prosecution to ask defendant if that was the first occasion he ever had any trouble with a gun with any person and if he had ever drawn a gun on anybody before, to which questions defendant answered that he never used a gun on anybody before and that he never drew a gun on anybody.

[6] Id.—Prior Threat With Gun—Rebuttal.—In such prosecution, subsequent to the above proceedings and during the production of rebuttal evidence by the prosecution, it was not error to permit the state to produce a witness who was permitted to testify, over defendant's objection, to the effect that three or four years previous to the trial he had been hunting on defendant's premises when defendant appeared holding a long gun pointed at him, that he proceeded toward defendant but was commanded by the latter to stop, defendant saying, "No, don't come any closer, if you do I will kill you."

[7] Id. — Character of Decedent — Error Without Prejudice. — In this prosecution for murder, conceding that the trial court erred in permitting the mother of the deceased, over defendant's objection, to testify, among other things, that the deceased had served two years in the navy, the reception of such evidence could not have prejudicially affected defendant.

[8] Id.—Error Without Injury—Constitutional Law.—Since the adoption of section 4½ of article VI of the constitution injury or prejudice cannot be presumed from the mere fact of error, but to justify a reversal on appeal such injury or prejudice must affirmatively appear from an inspection of the record.

---

(1) 17 C. J., p. 295, n. 63; 40 Cyc., p. 2608, n. 62.   (2) 17 C. J., p. 294, n. 57.   (3) 17 C. J., p. 289, n. 13.   (4) 16 C. J., p. 584, n. 61 New; 17 C. J., p. 333, n. 88.   (5) 40 Cyc., p. 2510, n. 29. (6) 16 C. J., p. 581, n. 21, p. 867, n. 25.   (7) 17 C. J., p. 317, n. 10. (8) 17 C. J., p. 274, n. 22; 30 C. J., p. 314, n. 54.

8.   See 8 Cal. Jur. 601; 2 R. C. L. 235.

APPEAL from a judgment of the Superior Court of Imperial County and from an order denying a new trial. Franklin J. Cole, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles E. Scott and Edgar B. Hervey for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, E. R. Utley, District Attorney, and J. E. Simpson, Deputy District Attorney, for Respondent.

THE COURT.—The following opinion, prepared by Mr. Justice Lawlor, is adopted as the opinion and decision of the court:

"The defendant, D. B. Hoffman, was informed against by the District Attorney of the County of Imperial for the crime of murder. It was stated in the information, among other things, that the defendant had, on May 29, 1923, murdered John A. Schafer in said county. After trial the defendant was convicted of murder in the second degree. The judgment of conviction was, however, reversed on appeal (195 Cal. 295 [232 Pac. 974]) and a new trial had. The second trial of defendant on the charge likewise resulted in his being convicted of murder in the second degree. From the judgment entered upon this latter conviction and from an order denying a motion for a new trial defendant prosecutes this appeal. The evidence produced at the second trial is substantially the same as that produced upon the first trial. This being so, a general statement of the evidence will suffice for a consideration and weighing of the errors asserted to have occurred upon the second trial.

"The homicide was admitted by the appellant but is claimed to have been in self-defense. At the time of the homicide the appellant was a rancher in the Imperial Valley living with his wife on leased premises. One Donald Cornelison had been employed by appellant about the ranch but left said employ after having worked approximately a day and a half. On the evening of the day that Cornelison left appellant's employ, he, Cornelison, in company with one James H. Shell and the decedent, came in an automobile to appellant's ranch and there engaged in conversation with

one of the ranch hands.  The trio departed in said automobile about 9 P. M.  Shortly thereafter the appellant observed an automobile stopped, with lights out, opposite a field leased by him and in which stood his thresher and tractor.  Appellant suspecting that the occupants of the parked car were about to steal from his thresher and tractor drove in his car, accompanied by his wife, in the direction of the other machine.  At this point in the narrative the appellant testified in substance that upon reaching the parked car he left his automobile and saw two boys proceeding in the direction of the thresher whereupon he called to them to come away from there; that he fired one shot in the air apparently to frighten them; that subsequent to the firing of the shot in the air the decedent, whom he did not at that time recognize, appeared and said, 'What in hell are you doing here?'; that appellant's wife left their automobile and inquired of decedent what the boys were doing there, to which he replied 'None of your damned business'; that decedent approached him with one hand on his right hip pocket and threatened that he would 'get him'; that as decedent advanced toward him he, appellant, backed away; that during the progress of decedent's asserted threatening advance toward him decedent started to remove his hand from his hip pocket whereupon appellant shot him; that he believed that decedent had a gun on him; that decedent was about six feet from him when he shot him having advanced approximately twenty feet from the starting place.

"In all material respects the appellant's narrative of the immediate events leading up to the homicide was corroborated by the testimony of his wife.

"Donald Cornelison, called as a witness for the prosecution, testified to the effect that he and James H. Shell had entered the field containing the thresher and tractor for the purpose of securing a piece of wire with which to repair a broken shock absorber on their car; that decedent was in the car with them when they stopped for this purpose; that while in the field they heard the appellant call to them; that as they were coming from the field he saw the decedent leaning with his right hand on their car and with his left hand on his side; that the appellant turned and fired upon the decedent who exclaimed 'I am shot'; that decedent thereupon climbed into appellant's car; that appellant then pointed the gun at the witness and inquired what 'devil-

ment' they were up to; that he told appellant the purpose of their entry into his field; that appellant told him and Shell to take decedent from appellant's car and to a doctor; that they did so; and that decedent, so far as he was aware, did not have a weapon upon his person at the time of the homicide.

"Substantially the same story was told by James H. Shell when called as a witness for the prosecution.

[1] "1. The first assignment of error is that the trial court made certain asserted improper remarks touching the admissibility of a record of the juvenile court, which remarks are said to have been prejudicial to the appellant. It appears that appellant, for the purpose of impeaching the witness Cornelison, offered in evidence a record of the juvenile court which showed that Cornelison had previously entered a plea of guilty in said court to a charge of grand larceny. The trial court after expressing some doubt as to the admissibility of such a record for impeachment purposes, stated in part: ' . . . I don't think it is very important. To save time I think it may be admitted. . . . I do not think it amounts to anything in particular.' Counsel for appellant immediately requested that the foregoing remarks of the court be expunged from the record.

"We are of the opinion that the record of the juvenile court was not admissible in the first instance for purposes of impeachment as the proceedings in such a court are not penal in their character. (*In re Daedler,* 194 Cal. 320 [228 Pac. 467].) This being so, no plea of the minor or finding of the juvenile court based thereon could amount to a conviction of a felony so as to render the record admissible for impeachment purposes. The error then, if any, of the trial court in commenting upon the same cannot be held to be prejudicial.

[2] "2. It is next urged that the court erred to the prejudice of appellant when it denied a challenge for cause directed at a prospective juror who stated, during his examination on *voir dire,* that he was of the opinion that the appellant had killed the decedent and that it would require evidence to remove such opinion. At the time this declaration was made by the prospective juror appellant had exercised all of his peremptory challenges and his counsel, after stating that if further peremptory challenges were available one would be employed to exclude the talesman, challenged

the juror for cause. In our view the court did not prejudicially err in denying the challenge for, as already indicated, the appellant during the course of the trial admitted the homicide but urged that it was justified. It is not shown, therefore, that the juror maintained an opinion upon the sole issue in the case, namely, whether or not appellant had acted in self-defense.

[3] "3. The name of James C. Sharp was drawn from the jury box as a prospective juror when it was ascertained that he was not, at the time, in the courtroom. The slip bearing his name was thereupon placed upon the clerk's desk and other names withdrawn from the box sufficient to temporarily complete the jury. Subsequently Sharp returned to the court room and, over the objection of appellant that he could not properly be called as a juror without a return of his name to the box and a redrawing therefrom, was seated in the place of an excused juror and examined. He was not among those who finally sat in the case and nowhere in the record does it appear by what method he was excused. In view of these circumstances, it cannot be held that the procedure by which he was temporarily seated as a juror, even assuming, without deciding, it to have been erroneous, was prejudicial to appellant. The only possible injury that appellant could have suffered would be the use of one of his peremptory challenges to unseat Sharp. But, as the record does not show the method by which he was excused this court must assume, the burden resting upon appellant to show injury, that he was either excused for cause or upon a peremptory challenge of the prosecution. The contention is therefore without merit.

[4] "4. Hereunder it is urged that the trial court erred in striking out, on motions of the prosecution, the testimony of George M. Austin and George R. Wade called as character witnesses by the appellant. The proceedings leading up to the orders striking out the testimony of these respective witnesses were somewhat analogous and may, therefore, be stated in substance as follows: After each of said witnesses had, in response to questions propounded by counsel for the appellant, testified to the good reputation of the appellant for peace and quiet in the community in which he resided, the prosecution on cross-examination asked each witness if he had ever discussed appellant's reputation with anyone or heard it discussed. These questions were an-

swered in the negative.   Thereupon the prosecution inquired
of each witness if his testimony represented his personal
opinion of the appellant for the enumerated traits.   The
motions to strike and the orders followed and were, appar-
ently, based upon the affirmative answers made to this latter
question.   We are of the opinion that the trial court erred
in granting the motions of the prosecution and in ordering
the testimony of these respective witnesses stricken out.
The fact that neither witness had heard the subject discussed
was some evidence of appellant's good reputation in the
community where he resided (*People* v. *Adams,* 137 Cal. 580
[70 Pac. 662]).   Moreover, the witnesses may not have recog-
nized a possible distinction between testifying as to reputa-
tion and testifying to an opinion as to reputation.   We are
of the opinion, however, that the error was not preju-
dicial for the appellant offered and had admitted the testi-
mony of seven other character witnesses.   The State did not
produce an equal number of witnesses who testified to the
contrary.   We conclude that the error of the trial court in
this respect did not work a miscarriage of justice and would
not, therefore, warrant a reversal of the judgment and
order.

[5]   "5. While on the witness stand on his own behalf
the appellant was interrogated in part by his counsel to the
following effect: 'During the 22 years you have been in
Imperial County, except for the matter which is the subject
of this trial here, have you ever had any trouble or difficulty
with anybody whomsoever, other than a matter of such dis-
cussion as anyone is apt to be subject to?   Have you ever
been charged with any offense whatsoever?'   Appellant re-
sponded: 'Never, never in my life.'   On cross-examination,
and over the objection of appellant's counsel, the prosecution
asked the appellant the following questions: 'Q. This is the
first occasion you ever had any trouble with a gun with any
person, Mr. Hoffman? . . . Q. Did you ever draw a gun
on anybody before?'   To which questions the appellant re-
spectively answered: 'A. I never used a gun on anybody
before.'   And, 'A. No, sir.   I never drew a gun on any-
body.'   We find no merit in appellant's contention that the
trial court ruled erroneously in each of these instances.
The two enumerated questions asked on cross-examination
were, in our opinion, clearly within the scope of the direct

examination of appellant and therefore proper cross-examination.

[6] "6. Subsequent to the above proceedings and during the production of rebuttal evidence by the prosecution, the State produced a witness who was permitted to testify, over appellant's objection, to the effect that three or four years previous to the trial he had been quail hunting on the appellant's premises when the appellant appeared holding a 'long gun' pointed at him; that he proceeded toward the appellant but was commanded by the latter to stop, the appellant saying 'No, don't come any closer, if you do I will kill you.' We are of the view that this rebuttal evidence was properly admitted for it tended to impeach the testimony given by appellant that he had led an untroubled life and had never drawn a gun on anyone. In so holding we are not unmindful of the rules that a witness may not be impeached as to collateral matters, and, that proof of character by evidence of general reputation can be met only by evidence of general reputation and not by specific acts. Neither of these rules is, in our opinion, applicable so as to preclude the introduction of this rebuttal testimony.

[7] "7. Under this assignment of error it is urged that the trial court erred in permitting the mother of the decedent, over appellant's objection, to testify, among other things, that the decedent had served two years in the navy. The attorney-general having in mind the rule that the character of the decedent is not in issue unless it has first been attacked by the defense, readily concedes that the introduction of the evidence complained of hereunder may have been erroneous but contends that its reception could not have prejudicially affected the appellant. With this latter contention we are in accord. Assuming this testimony to have been improperly admitted we do not think that the appellant was injured thereby.

"Other contentions urged are without merit.

[8] "In conclusion it may be stated that we are of the opinion that the errors found to have been committed during the trial were not prejudicial to the appellant nor did they influence a verdict of conviction which would not have, but for their commission, been rendered. Since the adoption of section 4½ of article VI of the Constitution injury or prejudice cannot be presumed from the mere fact of error. To justify a reversal on appeal such injury or

prejudice must affirmatively appear from an inspection of the record. The evidence here was sufficient to sustain the verdict rendered and we cannot say upon an examination of the record that a miscarriage of justice has resulted.''

The judgment and order appealed from are and each is hereby affirmed.