[Crim. No. 2653.  First Dist., Div. One.  July 28, 1950.]

THE PEOPLE, Respondent, v. GRANT E. HARRIS, Appellant.

Charles R. Garry for Appellant.

Fred N. Howser, Attorney General, Clarence A. Linn and Wm. M. Bennett, Deputy Attorneys General, for Respondent.

PETERS, P. J.—Section 4502 of the Penal Code makes it a felony for any prisoner committed to a state prison to possess, carry upon his person, or have under his custody, among other things, ". . . any dirk or dagger or sharp instrument . . ." Harris was charged with and convicted of a violation of this section in that on March 6, 1949, while an inmate of San Quentin, he unlawfully possessed "a sharp instrument, to-wit: a metal wood chisel . . . with a sharpened point." At the trial Harris elected to conduct his own defense, but on this appeal is represented by counsel. He appeals from the judgment of conviction and from the order denying his motion for a new trial.

The chisel was introduced into evidence and has been examined by this court. It is a steel wood chisel, with the wooden handle broken off, is about 6 inches long, three-quarters of an inch wide, an eighth of an inch thick, and has a sharpened point.

The evidence shows that on March 6, 1949, Harris, then serving time for second degree murder, and conspiracy to commit robbery, was possessed of this chisel in violation of the above section. Ballard, a guard at the prison, testified that on the morning of the day in question he saw Harris, whom he knew by sight, walking across the big yard. When Harris was about 20 feet distant he noticed an oblong object in Harris' pocket. He called to Harris to stop. Harris immediately started to run away, whereupon Ballard took up the chase yelling to Harris to stop and blowing his warning whistle. He saw Harris take an object from his pocket with his right hand. About this time Harris fell, dropped the object, picked it up with his left hand, got up, and continued to run away. Harris was at all times within sight of Ballard until Harris rounded a corner of the south cell block. Just after Harris turned this corner he was captured by Maxwell and Keffer, two other guards. While these two guards, and several more who had arrived, were struggling with and trying to subdue Harris, Keffer yelled at Ballard that Harris had dropped a metal object on the pavement. Ballard picked it up about 5 inches from Harris' feet. It was the chisel in question. While several guards testified that they did not see Harris drop the chisel, two guards positively testified that they saw the chisel in Harris' hand, and saw him drop it. Keffer testified that he grabbed Harris' right arm and twisted it behind Harris' back, and that Sergeant Todd grabbed Harris' left hand and arm

and forced him to drop the chisel. Todd testified that it was he who forced Harris to drop the chisel. This testimony is ample to support the judgment.

Harris tried to show by his own testimony, and that of several inmates, that it was not he but another Negro convict that was running in the yard, but the identification of Harris as the running man was overwhelming. Harris testified that he at no time was possessed of the chisel and that what he had in his left hand was his wrist watch. The guards did testify that Harris had a wrist watch with the band wrapped around the fingers of his left hand. It was defendant's theory that the guards had "framed" him, and that some other convict had thrown the chisel away when frightened by the whistles and the guards converging on the south cell block entrance. This theory was unsupported by any credible evidence, and was obviously and properly disbelieved by the jury.

The first contention of defendant is that he was deprived of a fair trial because of an incident that occurred just after the first prosecution witness, a guard from San Quentin, had been called by the district attorney. The defendant asked that all other guards that were present, and who were to be called as witnesses, be excluded from the courtroom. The court granted this request but stated that one guard, in addition to the one testifying, would be permitted to remain in the courtroom. During the ensuing colloquy, a guard in the body of the courtroom stated that he was present and was not going to testify. Thereupon, the district attorney asked that such guard be permitted to remain in the courtroom and be permitted to be armed. The court granted these requests.

It seems to be the thought of defendant that, because this event called attention to the fact that he was a convict, and because an armed guard was permitted to remain in the courtroom to watch him, an atmosphere of prejudice was created so that he was prevented from having a fair trial.

There is nothing in this occurrence that supports the conclusion that this defendant was deprived of a fair trial. Certainly, keeping an armed guard in the courtroom when a person already convicted of murder and conspiracy to commit armed robbery is on trial, is an elementary and reasonable safeguard. While it is true that, where a prisoner is kept in chains and shackles throughout the trial, and no necessity exists for such stringent measures, such conduct is prejudicially erroneous (*People* v. *Harrington*, 42 Cal. 165 [10 Am.Rep. 296]), where

reasonable precautions are taken, the fact that such precautions necessarily bring before the jury the fact that the defendant is a convict and perhaps a dangerous character does not deprive him of a fair trial. (*People* v. *Kimball*, 5 Cal.2d 608 [55 P.2d 483]; *People* v. *Metzger*, 143 Cal. 447 [77 P. 155]; *People* v. *Thompson*, 23 Cal.App.2d 339 [72 P.2d 927]; *People* v. *David*, 12 Cal.2d 639 [86 P.2d 811]; *People* v. *Loomis*, 27 Cal.App.2d 236 [80 P.2d 1012].) It was not the fault of the prosecution that defendant was on trial, nor was it the fault of the prosecution that the defendant was a man who had already been convicted of several crimes of violence. The precaution here taken was reasonable. The court was as lenient as the circumstances of the case permitted.

█ Defendent next complains of certain questions asked him by the district attorney. The defendant elected to take the stand and he testified at some length. On direct examination he denied ever having had possession of the chisel, and denied that he ever possessed such weapons. His exact statement on direct examination was: "I didn't have that in my possession. I don't need it. I wouldn't have it. I don't do those things. . . ." On cross-examination by the district attorney, the following questions were asked and answers given:

"Mr. BAGSHAW: Q. You say you don't have those things —you don't need them? A. I positively don't need them. Q. You refer to this instrument by that. . . . You never carry such things? A. I had never carried any such thing. Q. On Sunday, June 20th, you not only carried such an instrument, but stabbed one Watson in the back with a knife? A. It isn't true. Q. And went to solitary for it? A. Mr. Watson got stabbed in a fight, which he and I had. Another inmate came up behind him and stabbed him in the back. The matter was referred to the courts of Sacramento. Q. That was in Folsom? A. Yes, and the District Attorney there, after hearing what Mr. Watson had to say, and several others, said he couldn't take me into court, and I was let out immediately after his finding. It was never proven I cut anyone, or intended to."

█ It will be noted that there was no objection made to these questions. Therefore, even if it were error to ask the questions, which it was not, defendant cannot now complain. It is normally the rule that failure to object or failure to assign the asking of improper questions as misconduct, constitutes a waiver and precludes raising the point on appeal. (*People* v. *Routh*, 182 Cal. 561, 567 [189 P. 436].) █ But

there was no error in the asking of the questions. The cross-examination was well within the scope of the direct testimony. In view of defendant's statement made on direct that he never had had a knife in his possession while an inmate, it was permissible for the district attorney to attempt to show that on at least one prior occasion the defendant had unlawfully carried a knife while in prison. Defendant's answers to the question demonstrate that the cross-examination had some basis and that the questions were asked in good faith. It is, of course "the settled rule that it is proper in a criminal case to cross-examine a defendant upon any relevant and material matter elicited on his direct examination, for the purpose of showing conduct or statements inconsistent with his direct testimony." (*People* v. *Westek*, 31 Cal.2d 469, 476 [190 P.2d 9].) That rule is here applicable. (See, also, *People* v. *Hoffman*, 199 Cal. 155, 161 [248 P. 504].)

The last contention of defendant is that section 4502 of the Penal Code is invalid because it does not define what constitutes a "sharp instrument" and is therefore indefinite, uncertain and ambiguous. The argument requires but scant attention. Criminal statutes are not to be strictly construed, but all the provisions of the Penal Code "are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." (Pen. Code, § 4.) The Legislature was not required to list every type of sharp instrument in the statutory prohibition. All that is required is that the crime must be clearly defined so that any reasonable person will know what constitutes a violation. (See cases collected 7 Cal.Jur. p. 843, § 7; 14 Am.Jur. p. 773, § 19.) The present defendant obviously knew what the statute meant, and knew that he was violating it. His flight upon the request of the guard to produce the object in his pocket, amply demonstrates this. "Immediate flight, even in the absence of any accusation, may afford persuasive evidence of consciousness of guilt." (*People* v. *Cooper*, 81 Cal.App.2d 110, 117 [183 P.2d 67].)

The chisel was clearly a "sharp instrument" within the meaning of section 4502. It has already been described. This section of the Penal Code was passed "to protect inmates and officers of state prisons from the peril of assaults with dangerous weapons perpetrated by armed prisoners." (*People* v. *Wells*, 68 Cal.App.2d 476, 481 [156 P.2d 979].) The statute should be reasonably construed to accomplish this beneficent

purpose. (See, also, *People* v. *Crenshaw*, 74 Cal.App.2d 26, 28 [167 P.2d 781].)

The judgment of conviction and the order denying the motion for a new trial are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.