[Crim. No. 5784. First Dist., Div. One. July 13, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. RUBEN MORALES, Defendant and Appellant.

Robert Morales, in pro. per., and Michael D. Sanford, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Louise H. Renne, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, P. J.—Defendant appeals from a judgment of conviction, following a trial by jury, of possession of a sharp instrument by a person confined in a state prison in violation of Penal Code section 4502.[1] As to the first contention on appeal, that section 4502 is unconstitutional, we find it to be without merit. As to the other contention, that the trial court abused its discretion in imposing a consecutive rather than a concurrent sentence, we hold that the circumstances surrounding the sentencing of defendant require that the sentence be set aside and that defendant be remanded to the lower court for resentencing.

### The Constitutionality of Section 4502

Defendant's contention that section 4502 is unconstitutionally broad and vague is two-pronged, namely, that the section does not define the term "sharp instrument" and that it prohibits possession of weapons and instruments which inmates may be required to use in the course of their prison duties. The same arguments were urged in *People* v. *Crenshaw*, 74 Cal.App.2d 26 [167 P.2d 781] and *People* v. *Harris*, 98 Cal.App.2d 662 [220 P.2d 812], where the validity of section 4502 was challenged. In *Harris* a chisel was held to be a "sharp instrument" within the meaning of section 4502. There the invalidity of section 4502 was asserted in part on the basis that the section does not define what constitutes a sharp instrument and is therefore indefinite, uncertain and ambiguous. ▋ In rejecting this contention the reviewing court stated as follows: "The Legislature was not required to list every type of sharp instrument in the statutory prohibi-

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

tion. All that is required is that the crime must be clearly defined so that any reasonable person will know what constitutes a violation. [Citations.]'' (P. 666.) Applying this rule to the facts of the case it was held, in *Harris,* that the defendant's flight, upon the request of the guard to produce the object in his pocket, amply demonstrated that the defendant knew what the statute meant and knew that he was violating it. ▮ The same rationalization is applicable to the present case, where defendant was found to be in possession of a knife, clearly a sharp instrument within the meaning of section 4502, and where the evidence relating to defendant's attempt to secrete the knife on his person and to his nervousness and emotional upset when the prison guard discovered the knife indicated an awareness on the part of defendant that his possession of the knife was illegal.[2]

In *Smith* v. *Peterson,* 131 Cal.App.2d 241, 245-246 [280 P.2d 522, 49 A.L.R.2d 1194], we find the principles applicable to the constitutionality of a penal statute stated as follows: ''It is well settled that a criminal statute which is so indefinite, vague and uncertain that the definition of the crime or standard of conduct cannot be ascertained therefrom, is unconstitutional and void. However, there is a uniformity of opinion among the authorities that a statute will not be held void for uncertainty if any reasonable and practical construction can be given to its language. Nor does the fact that its meaning is difficult to ascertain or susceptible of different interpretations render the statute void. All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears. Doubts as to its construction will not justify us in disregarding it. In determining whether a penal statute is sufficiently explicit to inform those who are subject to it what is required of them the courts must endeavor, if possible, to view the statute from the standpoint of the reasonable man who might be subject to its terms. It is not required that a statute, to be valid, have that degree of exactness which inheres in a mathematical theorem. It is not necessary that a statute furnish detailed plans and specifications of the acts or conduct prohibited. The requirement of reasonable certainty does not preclude the use of ordinary

[2]The record discloses that upon the guard's discovery of the knife inside defendant's left thigh defendant began to stutter and visibly shake; ''began to convulse and was on the verge of tears''; and blurted out ''I had to do it, I am not a violent man.''

terms to express ideas which find adequate interpretation in common usage and understanding. [Citations.]''

In *Connally* v. *General Constr. Co.,* 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126] the test of unconstitutional vagueness with respect to the terms of a penal statute was expressed in terms of a requirement that the statute must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. (See *In re Newbern,* 53 Cal.2d 786, 792 [3 Cal.Rptr. 364, 350 P.2d 116]; *People* v. *McCaughan,* 49 Cal.2d 409, 414 [317 P.2d 974].) And in *American Civil Liberties Union* v. *Board of Education,* 59 Cal.2d 203, 220 [28 Cal.Rptr. 700, 379 P.2d 4], we find this statement: ''In the final analysis, the determination that a particular statute is or is not too broad in the constitutional sense turns not so much on its language as upon its effect. A statute may be phrased in words that are 'broad,' in that they convey general rather than specific concepts, and yet be the means of stating a regulation that is narrow and limited in its application.''

In the light of the foregoing we think that section 4502 is constitutionally definite and certain. In reaching this conclusion we are satisfied that men of common intelligence do not have to guess as to its meaning nor will they differ as to its application. Our conclusion is fortified by the specific holding in *People* v. *Wells,* 68 Cal.App.2d 476, 480-481 [156 P.2d 979],[3] that section 4502 is not unconstitutional either under the California Constitution or the federal Constitution. (See *In re Bacon,* 240 Cal.App.2d 34, 55-56 [49 Cal.Rptr. 322].)

Turning to defendant's contention that section 4502 is invalid in that it might be construed to prohibit the possession of weapons or instruments which inmates may be required to use in the course of their prison duties, we note that a similar argument was disposed of in the *Crenshaw* case on the rationale that since the defendant was not in possession of the sharp instrument under circumstances showing that such instrument was required for the performance of his prison duties, section 4502, as applied to the facts of that case, was a valid statute. Similarly in the instant case, since we are not confronted with a situation in which defendant was required to be in possession of the knife in order to perform his prison duties, we need not concern ourselves with the question of

[3]This case was cited in both *Harris* and *Crenshaw* as authority for the holdings there made.

whether section 4502, when applied to the factual situation alluded to by defendant, is unconstitutional.

## Abuse of Discretion in Sentencing Defendant

While recognizing that the imposition of a concurrent or consecutive sentence in the instant case was within the discretion of the trial court (see § 669; *In re Falk*, 64 Cal.2d 684, 685-687 [51 Cal.Rptr. 279, 414 P.2d 407]; *In re Sandel*, 64 Cal.2d 412, 416 [50 Cal.Rptr. 462, 412 P.2d 806]; *People* v. *Hubert*, 204 Cal.App.2d 617, 619 [22 Cal.Rptr. 450]; *People* v. *Graham*, 198 Cal.App.2d 617, 620 [18 Cal.Rptr. 134]; *People* v. *Loeber*, 158 Cal.App.2d 730, 737 [323 P.2d 136]; *People* v. *Tipton*, 124 Cal.App.2d 213, 217 [268 P.2d 196]; *People* v. *Van Valkenburg*, 111 Cal.App.2d 337, 343 [224 P.2d 750]; *People* v. *White*, 100 Cal.App.2d 836, 839 [224 P.2d 868]; *In re Kingsbury*, 74 Cal.App.2d 959, 962 [170 P.2d 82]; *People* v. *Hayes*, 9 Cal.App.2d 157, 161 [49 P.2d 288]), defendant argues that in imposing a consecutive sentence the court appeared to have based its decision solely upon the fact that defendant, although having no substantial defense to present to the instant charge, pled not guilty and demanded a jury trial, thus inconveniencing the court.[4]

[4]Specifically the trial court's remarks at this time were as follows:

"THE COURT: Quite frankly, I have given it a lot of thought, to giving a consecutive sentence, and I don't think I have ever given one before. It's not necessarily because of the aggravated nature of the offense because it wasn't particularly aggravated in terms of what can happen at the prison. But what I am very much disturbed about is what Mr. Morales put everyone through, not excepting yourself, Mr. Breiner, I have no objection, in fact I feel all the inmates should be free to come in and present any defense that they may have to any charge that is brought against them in the Criminal Court. They have the same rights as anyone else in that regard, but I don't think it's fair for an inmate, or anyone else, to come to Court and demand a jury trial, demand the services of the public defender, obtain what I thought was a first class and able defense, when there really isn't any defense to this case, and there was no effort to put on a defense because there couldn't be, and I don't think this is right. I don't think Mr. Morales in and of himself is the kind of man that has to have a consecutive sentence, but I think somewhere along the line the Court has to face up to the situation. I'd like the word to go back to San Quentin that if this kind of defense is brought in here again they will get a consecutive sentence. I think they should because I think there is a point at which the Court should not permit an inmate at San Quentin or anyone else to just plain play games. Another aspect of the matter, I learned for the first time that Mr. Morales is a good English student. We hired an interpreter for Mr. Morales on the basis that he didn't understand English. I think that it is important to make the point —I don't think it will make much difference as to how long he stays there, but I think it is important to make the point. I'd be willing to hear any views that you may have on it, Mr. Fitch."

". . . . . . . . . . ."
"If there is honest doubt, or even the possibility of honest doubt that

The particular question posed by defendant has not, to our knowledge, been presented to a reviewing court in this state. The question has, however, been presented to the United States Courts of Appeal, in *United States* v. *Wiley,* 267 F.2d 453, 456; *United States* v. *Wiley,* 278 F.2d 500, 501-504, wherein it was held that it is error for the trial court to penalize a defendant in the form of a heavier sentence merely because he chose to plead not guilty and to stand trial where his defense was not frivolous and was not presented in bad faith.[5]

In *Wiley,* the defendant was convicted, following a trial by the court, of theft of goods in interstate commerce. The defendant offered no evidence at the trial. Prior to the imposition of sentence the defendant moved for consideration of his application for probation, to which motion the trial court responded as follows: ''Had there been a plea of guilty in this case probably probation might have been considered under certain terms, but you are all well aware of the standing policy here that once a defendant stands trial that element of grace is removed from the consideration of the Court in the imposition of sentence.'' (At p. 455.) On appeal (267 F.2d 453) the sentence was set aside and the trial court ordered to consider the defendant's application for probation. In so holding the appellate court stated that the federal statute establishing probation (18 U.S.C.A. § 3651) made no distinction between offenders who pled guilty and those who stood trial. However, the appellate court did make the following comment in the form of a qualification of its determination: ''Nothing which we say is to be construed as barring the district judge, who entertains an application for probation, from considering, *inter alia,* whether a defendant who pleads not guilty has done so when he has only a frivolous defense, an important effect of the trial being to merely burden the court and congest its calendar. However, in the case at bar, the defense certainly was not frivolous nor does it appear to have been presented in bad faith.'' (At p. 456.)

Following this decision, the case was remanded to the trial

---

a defendant can be convicted, certainly, a defendant should have the right to raise the point, but when he doesn't have any basis of offering a defense, then I think he should suffer some additional sanction and I am inclined to agree that perhaps these knife possession cases should be treated a little more severely than they have been. The practice has been to give a concurrent sentence, I know, I have done it myself, but I think this is a proper case for a consecutive sentence and that is what he is going to get. Tell the people back at San Quentin why he got it, too.''

[5]These cases involve the same defendant and the same case.

court for consideration of the defendant's application for probation. Upon remand the trial court denied the defendant's application for probation and sentenced him to a prison term of three years. The defendant again appealed from the judgment (278 F.2d 500), his argument being that since the trial court had described him as a "minor participant" in the crime as compared to his codefendants, the disparity between his sentence and the lesser sentences received by his codefendants, all of whom had pled guilty, was based upon the fact that the defendant stood trial. Accordingly, argued the defendant, the trial court abused its discretion in sentencing the defendant. The appellate court accepted this argument, setting aside the defendant's sentence. In so doing, it commented as follows: "Nor can the disparity in sentences imposed here be justified on the ground that Wiley asked for a trial. As we said in our former opinion . . . 'the defense certainly was not frivolous nor does it appear to have been presented in bad faith.' Our part in the administration of federal justice requires that we reject the theory that a person may be punished because in good faith he defends himself when charged with a crime, even though his effort proves unsuccessful. It is evident that the punishment imposed by the district court on Wiley was in part for the fact that he had availed himself of his right to a trial, and only in part for the crime for which he was indicted." (P. 504.)

The *Wiley* cases are persuasive and we agree essentially with their rationale. Accordingly, we hold that it was an abuse of discretion for the trial court in the instant case to impose a consecutive sentence upon defendant solely upon the basis that he availed himself of the right to trial. The Attorney General, however, makes several arguments in rebuttal of defendant's position. First, he argues that defendant has misinterpreted the thrust of the trial court's intentions in imposing a consecutive sentence. In this regard the Attorney General claims that such a sentence was not imposed because defendant demanded a jury trial, but rather because defendant had been merely "playing games" with judicial procedure. While it is true that the court did state that a defendant should not be allowed to "just plain play games," we think it is apparent that the basis for this statement was the fact that defendant, although lacking a meritorious defense, had availed himself of the right to a jury trial.

Secondly, the Attorney General takes the position that the *Wiley* cases are distinguishable from the instant case because

in *Wiley* the defendant's defense was neither frivolous nor presented in bad faith whereas in the instant case defendant failed to present any defense to the charge. We note, initially, that in *Wiley,* as in the instant case, the defendant did not take the stand nor did he offer any evidence on his behalf. The *Wiley* cases do not indicate, in the light of this circumstance, the basis for the appellate court's conclusion that the defense was neither frivolous nor made in bad faith. It is reasonable to assume that this conclusion was based on the fact that the defendant put the prosecution to its proof by availing himself of the right of cross-examination. In the instant case the record shows that defendant's counsel extensively cross-examined the People's witnesses in an attempt to discredit them and that he indulged in extensive *voir dire* examination with reference to the admissibility of certain evidence including certain statements which the prison authorities elicited from defendant. Accordingly, we do not deem the defense in the present case to be frivolous or to have been taken in bad faith. In any event, we are of the opinion that a trial court cannot impose a more severe punishment on the basis of its conclusion that a defendant who has pled not guilty presented a frivolous defense or one which the court concludes was presented in bad faith. Any such implications in the *Wiley* cases are rejected by this court.

In our opinion a defendant who pleads not guilty and avails himself of the right to trial cannot be said to have presented a frivolous or bad faith defense even though he presented no evidence on his behalf or, if he presents evidence, even though such presentation is without merit. "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal, . . ." (§ 1096; see *People* v. *Wells,* 33 Cal.2d 330, 346 [202 P.2d 53].) This presumption must be weighed by the trier of fact along with all other evidence in arriving at a verdict or decision, and where the facts in the case are doubtful the presumption is sufficient to turn the scales in favor of an acquittal. (*People* v. *Hill,* 77 Cal.App.2d 287, 293 [175 P.2d 45].) Accordingly, the presumption of innocence not only exists at the inception of the trial but continues throughout the trial to the conclusion thereof. (*People* v. *Fitzgerald,* 14 Cal.App.2d 180, 195-196 [58 P.2d 718]; *People* v. *Barquera,* 154 Cal.App.2d 513, 517 [316 P.2d 641]; *People* v.

*O'Brien,* 106 Cal. 104, 105 [39 P. 325].) It is apparent, therefore, that the presumption of innocence in criminal law carries with it a ''built in'' defense which negates frivolity or bad faith since, unless it is overcome by proof of guilt to a moral certainty and beyond a reasonable doubt, this presumption is sufficient, in and of itself, to acquit a defendant. (See *People* v. *Yeager,* 194 Cal. 452, 486 [229 P. 40].)

We point out, furthermore, that the right of a defendant in a criminal case to rely upon the presumption of innocence is recognized by the emphasis given a defendant as to his concomitant right not to testify. Accordingly, comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt is forbidden as violative of the Fifth Amendment of the federal Constitution. (*Grffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].)

In sum, and in view of the foregoing, we think it is clear that by increasing the penalty in the case of a defendant who chooses to rely on the presumption of innocence, to put the state to the test of proving its case, and to assert his right to a jury trial, one is in effect penalizing a defendant who asserts rights to which he is entitled. (See 66 Yale L.J. 204, 217-218, 221-222.)

Finally, the Attorney General points out that the imposition of a consecutive sentence upon defendant would be justifiable because of the serious nature of the offense involved in the instant case and the fact that a concurrent sentence would not be an effective deterrent to a defendant who was already serving a prison sentence. While such factors would indeed be relevant in imposing sentence for an offense such as the instant one, the record does not reveal that these factors were considered by the trial court in imposing sentence in the instant case. Rather, as we have indicated, the record makes it clear that the sole basis for the trial court's decision in the instant case related to the fact that defendant had pled not guilty and demanded a jury trial despite the fact that in the trial court's opinion he did not present a meritorious defense. We point out, moreover, that even if it can be gleaned from the record that the basis of the punishment imposed upon defendant in the instant case was in part the fact that he had availed himself of his right to trial and in part the nature of the crime for which he was convicted, we would be compelled to the same conclusion in the light of the principles hereinabove discussed.

■ The conclusion reached by us is not to be construed as militating against the wide discretion possessed by a trial court in determining whether criminal sentences shall be served consecutively or concurrently, and we recognize that such discretion will not be disturbed on appeal in the absence of a showing of abuse of discretion. (See *People* v. *Graham,* 198 Cal.App.2d 617, 620 [18 Cal.Rptr. 134].) ■ Nor do we intend to convey the impression that the sentencing judge may not consider the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial. These are proper considerations and factors in the sentencing process which has deterrence and rehabilitation as its objective. ■ What we have concluded is that the trial judge abused his discretion because the particular factors utilized by him as his guides for sentencing should not have entered into the sentencing process.

The judgment is affirmed as to the adjudication that defendant is guilty of violating section 4502. The judgment is reversed only insofar as the sentence imposed is concerned, and the cause is remanded for the resentencing of defendant.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 7, 1967.