Filed 3/14/13  P. v. Lusk CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TIMOTHY NELSON LUSK,<br><br>    Defendant and Appellant. | B237125<br><br>(Los Angeles County<br>Super. Ct. No. KA094293) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christian R. Gullon, Judge.  Affirmed.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Timothy Nelson Lusk, appeals his conviction for possession of marijuana, being under the influence of a controlled substance, and transportation of marijuana, with prior serious felony conviction and prior prison term enhancements (Health & Saf. Code, §§ 11357, 11550, 11360; Penal Code, §§ 667, subds. (b)-(i), 667.5). Lusk was sentenced to state prison for nine years.

The judgment is affirmed.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

On the evening of May 19, 2011, Los Angeles County Deputy Sheriff Marcos Rosales saw defendant Lusk standing in front of a house on West Cienega Avenue in San Dimas. After making eye contact, Lusk tried to hide behind a low wall. Rosales noticed one of the windows in the house was broken and he thought Lusk might be involved in a burglary, so he exited his patrol car to investigate.

Lusk told Rosales he was on parole and had come to visit a friend, although he could not give Rosales the friend's name. A young woman, Jessica, was slouching down in the driver's seat of an SUV parked nearby. Rosales ordered Jessica out of the vehicle.

Because Lusk was sweating, agitated and his pupils were dilated, Rosales believed he might be under the influence of a controlled substance. After administering some tests, Rosales concluded Lusk was under the influence of methamphetamine. Lusk said he had used methamphetamine a day earlier.

Lusk said Jessica had given him a ride to the house. Asked if anything in the SUV belonged to him, Lusk mentioned a laptop-computer carrying case and a duffle bag. Inside the computer case, Rosales found tattoo-related magazines and sketches. Inside the duffle bag, he found men's clothing in Lusk's size and a plastic bag containing 438 grams of marijuana. Lusk initially denied the marijuana belonged to him. But when Rosales said Jessica would be going to jail because the marijuana was in her vehicle, Lusk said the marijuana was his and that Jessica had not known about it. Rosales told

2

Lusk, "You know, don't be stupid. If it's not yours, don't tell me it's yours. Don't take the fall for somebody else," but Lusk replied: "I can't do that to her. You know, she doesn't know – she has kids. She just gave me a ride. . . . [I]t's my marijuana." Lusk was arrested.

The next morning, a search of the West Cienega Avenue house uncovered 12 or 13 grams of marijuana and more than 50 one-inch-square plastic baggies. Officers arrested a person at the house on a charge of selling marijuana.

Los Angeles County Detective Rob DeYoung testified the marijuana found in Lusk's possession had a street value of $2,000 to $4,000, and was enough to have lasted a heavy marijuana user for more than a year. However, DeYoung explained, marijuana deteriorates within a few months and its quality continues to erode as time passes. He opined the marijuana in Lusk's duffle bag was intended for sale. This opinion was based on the quantity of marijuana recovered, the absence of any smoking paraphernalia in Lusk's possession, and the many baggies found in the West Cienega Avenue house which evidenced retail-level marijuana trafficking. DeYoung believed Lusk went to the house to sell marijuana to one of the residents, who then intended to resell it.

2. *Defense evidence.*

Lusk testified he was addicted to methamphetamine, having used it for more than 10 years. He was under the influence of the drug on the day he was arrested, but its effects were starting to wear off and he wanted to obtain more. So he asked Jessica for a ride to Robert's house on West Cienega Avenue in San Dimas. Lusk had only known Robert for a few weeks. Lusk was a tattoo artist and he wanted to see if Robert might be interested in a tattoo so Lusk could earn money to buy more methamphetamine.

There were two men in Jessica's car when she picked up Lusk; he didn't know them. Lusk had his computer carrying case with him. When Jessica arrived at Robert's house, all four of them went inside. Lusk showed Robert his tattoo sketches, but Robert wasn't interested. Lusk went outside to use his cell phone. He was standing in front of the house when Deputy Rosales drove past. Lusk tried to hide because he knew he was

3

in violation of parole for using methamphetamine. That was when Rosales stopped and approached him.

When Rosales asked him about the duffle bag in Jessica's SUV, Lusk denied it belonged to him. But when Rosales said Jessica would go to jail for the marijuana, Lusk falsely admitted it was his. He did this because he would be going to jail for violating parole anyway, and he did not want Jessica to be separated from her two young children.

## CONTENTION

The trial court improperly used Lusk's sentence to punish him for exercising his right to a jury trial.

## DISCUSSION

Lusk contends he is entitled to resentencing because the trial court violated his constitutional rights by imposing a more severe sentence in order to punish him for refusing a plea bargain offer and going to trial. This claim is meritless.

1. *Background.*

Prior to trial, the prosecution offered Lusk the following plea bargain: a 44-month sentence for pleading guilty to count 1 (possessing marijuana for sale), which consisted of a low term for the conviction, doubled under the Three Strikes law, plus a prior prison term enhancement. Lusk declined the offer.

On September 13, 2011, the jury convicted Lusk on count 1 for the lesser included offense of simple marijuana possession, in addition to counts for transporting marijuana and being under the influence of a controlled substance. After the jury was dismissed, the trial court asked counsel what date they wanted for sentencing and post-trial motions. Defense counsel said, "I'm wondering if the court would be willing – I guess I'm asking for an indication. EDP [the Early Disposition Program report] was 32 months. Beyond the EDP, I believe the offer was four years . . . as a second striker. I don't believe Mr. Lusk should be penalized in any way for exercising his right to have a jury trial." The trial court responded, "I certainly understand what you're saying, and I wholeheartedly agree with you, but I guess I'm not prepared to give an indicated today." The matter was continued for a week.

4

At the sentencing hearing, on September 20, 2011, the prosecutor asked for an aggravated term on count 3 (transportation of marijuana), arguing there were no mitigating circumstances and several aggravating factors:  Lusk was on parole when the crime was committed, and his prior convictions or juvenile adjudications were numerous or of increasing seriousness.  This three-year base term would be doubled under the Three Strikes law and two 1-year prior prison term enhancements would be added, for a total sentence of eight years.

Defense counsel then argued:  "I don't believe, and I think the court agrees, that Mr. Lusk should in no [*sic*] way be punished for exercising his right to have a trial on this case.  The jury made factual findings.  The jury found that this was not possessed for sale."  "[T]his is in fact transportation for personal use of 15 ounces of marijuana.  That is the bottom line . . . ."  Defense counsel asserted that had Lusk possessed a medical marijuana card he would not even have faced this charge.  "[G]iven the fact that the People's assessment of the case, early dispo offer was 32 months and after that they upped it to . . . 44 months, I think it's disingenuous to say now, well, he had a trial.  He lost.  We're going to give him, just because we can, more time."  "The jurors found that in fact this was transportation for personal use.  It's a small amount of marijuana.  It's not a huge amount of marijuana, and I believe that the man should not be punished for exercising his right to have a jury trial."  Defense counsel asked for a sentence of 32 months.

The trial court said it had tentatively decided to impose a nine-year term, consisting of a three-year midterm on count 3, doubled under the Three Strikes law, plus three consecutive one-year prior prison term enhancements.  The court explained it had selected the midterm despite there being no mitigating factors and multiple aggravating factors.  The court said it found "absolutely no evidence whatsoever . . . that Mr. Lusk uses marijuana," and noted the jury "certainly made no finding of fact that it was for personal use . . . ."

Then, just before inviting the parties to address the indicated sentence, the trial court said: "I do want to address some of the items . . . that [defense counsel] brought up, specifically with respect to punishment for going to trial. Mr. Lusk, understand this. The punishment is punishment for the crime, not for choosing to exercise your constitutional right. With all due respect to [defense counsel], the fact that you and your attorney and the district attorney's office were trying to resolve the issue for something less than what the court has decided to impose . . . didn't involve me. I wasn't involved in those negotiations between the two parties, so I don't know the reasons that both sides might have been talking about some time less than what the court is intending to impose, and those reasons . . . are not something that the court considers. What the two sides might have at some point thought about, offered, or expressed at the time is not really up to me to determine. Rather, the court has basic sentencing parameters, what I must follow, and I think I'm doing that to the best of my ability."

During his response to the indicated sentence, defense counsel urged the trial court to consider as a mitigating factor Lusk's methamphetamine addiction because, based on "general knowledge," the court could "take judicial notice of the fact that long-term drug addicts often act irresponsibly, on impulse, and that they often don't use the best judgment." To this, the court replied: "I certainly understand . . . what you're saying with respect to the fact that Mr. Lusk appears to be addicted to methamphetamine. I believe Mr. Lusk when he says that. To be honest, I didn't believe a lot of what he was saying on the witness stand, and apparently neither did the jury."

The trial court then imposed its indicated prison term of nine years.

2. *Legal principles.*

"The Sixth Amendment, made applicable to the states in this context by the Fourteenth Amendment of the federal Constitution, confers upon a defendant in a criminal prosecution the right to a trial by jury. [Citations.] The right to a trial by jury is recognized to be a 'fundamental constitutional right.' [Citations.] Similarly, article I, section 16 of the California Constitution confers upon a defendant in a criminal prosecution the right to a trial by jury. [Citations.] We have recognized that this state

6

constitutional right is fundamental.  [Citation.]"  (*People v. Collins* (2001) 26 Cal.4th 297, 304.)  "[T]he high court long has recognized that the state may not punish a defendant for the exercise of a constitutional right, or promise leniency to a defendant for refraining from the exercise of that right.  [Citations.]  Coercion in either form has been rejected, whether its source is executive, legislative, or judicial in nature.  [Citations.]" (*Id*. at pp. 305-306.)  " 'To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort [citation], and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional."  [Citations.]'  [Citations.]" (*Id*. at p. 306.)

Based on these principles, trial court sentences have been reversed where it can be determined the defendant has been punished for exercising a right to trial.  (See, e.g., *In re Lewallen* (1979) 23 Cal.3d 274, 279 [trial court responded to defense counsel's argument that informal probation would be appropriate sentence by saying, " 'You mean whether or not there's a disposition or not after a jury trial?' "]; *In re Edy D.* (2004) 120 Cal.App.4th 1199, 1202 ["court's statement that if the minor inconvenienced witnesses by having them come to court for an adjudication hearing, the option of [an alternative probation] disposition . . . would no longer be available to him"]; *People v. Morales* (1967) 252 Cal.App.2d 537, 542, fn. 4, italics added [trial court said prison inmate defendants "have the same rights as anyone else . . . , *but* I don't think it's fair for an inmate, or anyone else, to come to Court and demand a jury trial, demand the services of the public defender . . . when there really isn't any defense to this case"].)

3.  *Discussion*.

Lusk contends his sentence must be reversed because the trial court punished him for refusing the offered plea bargain and exercising his right to a jury trial.  This claim is meritless.

Paraphrasing *People v. Szeto* (1981) 29 Cal.3d 20, 35, Lusk acknowledges the mere "fact that a defendant receives a more severe sentence after being found guilty by a jury than he would have if he accepted a plea offer does not warrant an inference that the defendant was penalized for exercising his constitutional right to a jury trial. Appellant must show that the trial court made some comment or statement that could 'reasonably giv[e] rise to the inference that [the court] was penalizing [appellant] for exercising his right to jury trial.' "

Lusk argues, however, that the trial court's statements showed it was punishing him for going to trial: "[I]n support of its sentence, the court remarked that it had not believed appellant's testimony, that it believed appellant had intended to sell marijuana, as charged in count 1, despite the jury's acquittal of appellant on that count, and that it harbored doubts regarding appellant's claim of methamphetamine addiction. In sum, the court's remarks indicate that it based its sentencing choices, at least in part, on its perception that appellant had presented a non-meritorious defense despite appellant's acquittal on count 1. [¶] The court's statements in support of its sentencing choices resemble the statements found to indicate improper sentencing in *Morales* and *Lewallen*."

We cannot agree. The trial court's comments here were completely innocuous when compared to the statements made in *Morales* and *Lewallen*. Moreover, the court was entirely justified in concluding, for the purposes of sentencing, that Lusk had been trafficking in marijuana. There is nothing in this case to indicate the trial court was punishing Lusk for presenting a non-meritorious defense at his jury trial.

In *Morales*, the trial court explained it was imposing a consecutive sentence "not necessarily because of the aggravated nature of the offense because it wasn't particularly aggravated in terms of what can happen at the prison. But *what I am very much disturbed about is what Mr. Morales put everyone through*[.] . . . I have no objection, in fact I feel all the inmates should be free to come in and present any defense that they may have to any charge that is brought against them in the Criminal Court. They have the same rights as anyone else in that regard, but *I don't think it's fair for an inmate, or anyone else, to come to Court and demand a jury trial, demand the services of*

8

*the public defender, obtain what I thought was a first class and able defense, when there really isn't any defense to this case, and there was no effort to put on a defense* because there couldn't be, and I don't think this is right. I don't think Mr. Morales in and of himself is the kind of man that has to have a consecutive sentence, but I think somewhere along the line the Court has to face up to the situation. *I'd like the word to go back to San Quentin that if this kind of defense is brought in here again they will get a consecutive sentence.* I think they should because I think there is a point at which the Court should not permit an inmate at San Quentin or anyone else to just plain play games. Another aspect of the matter, I learned for the first time that Mr. Morales is a good English student. We hired an interpreter for Mr. Morales on the basis that he didn't understand English. I think that it is important to make the point . . . . [¶] *If there is honest doubt, or even the possibility of honest doubt that a defendant can be convicted, certainly, a defendant should have the right to raise the point, but when he doesn't have any basis of offering a defense, then I think he should suffer some additional sanction . . . .* Tell the people back at San Quentin why he got it, too." (*People v. Morales, supra,* 252 Cal.App.2d at pp. 542-543, fn. 4, italics added.)

In *Lewallen* our Supreme Court explained: "First, in response to defense counsel's suggestion that placing defendant on informal probation would suffice, the trial judge responded, 'You mean whether or not there's a disposition or not after a jury trial?' Second, after sentencing the trial judge stated, 'I think *I want to emphasize there's no reason in having the District Attorney attempt to negotiate matters if after the defendant refuses a negotiation he gets the same sentence as if he had accepted the negotiation. It is just a waste of everybody's time, and what's he got to lose.* And as far as I'm concerned, *if a defendant wants a jury trial and he's convicted, he's not going to be penalized with that, but on the other hand he's not going to have the consideration he would have had if there was a plea.*' " (*In re Lewallen, supra,* 23 Cal.3d at p. 277, italics added.) *Lewallen* concluded "that when the judge's statements are viewed as a whole, there can be no rational interpretation other than that he was basing petitioner's sentence

at least in part on the fact that he declined the prosecution's plea bargain and demanded a trial by jury." (*Id*. at p. 280.)

In the case at bar, the trial court said nothing even remotely similar to the improper comments in *Morales* and *Lewallen*. Lusk seizes on the trial court's disclaimer of any intention of punishing him for going to trial, and argues "such disclaimers do not excuse infringement upon a defendant's right to trial by jury." But it is obvious from everything the trial court said that this disclaimer had merely been a *response* to defense counsel's initial argument that the court should not punish Lusk for having gone to trial. Read in context, it is clear the trial court's comments were not meant to disguise an effort to penalize Lusk for having exercised his trial rights.

Lusk argues the record shows the trial court wanted to punish him for not presenting a meritorious defense because the court indicated it disbelieved his testimony about the marijuana and his claim of methamphetamine addiction. Again we disagree.

The trial court said, on the record, that it *believed* Lusk was addicted to methamphetamine. Lusk's citation of another, extremely ambiguous remark by the trial court does not establish otherwise.[1] As for the trial court saying it did not believe Lusk possessed the marijuana for personal use, the jury itself obviously disbelieved Lusk's testimony the marijuana did not belong to him and he only told police it was his to help out Jessica. Moreover, the trial court quite properly concluded that, for sentencing purposes, it appeared Lusk was trafficking in marijuana. There are "numerous federal and California decisions that uniformly hold that a jury verdict acquitting a defendant of a

---

[1] "[Y]our attorney has talked about general knowledge. I dare say . . . just based on the business that I'm in and have been for many years, perhaps understanding more than the average person the degree of addiction, the effect on the mind. I've heard from experts who have testified and told me also that [it] can take two or three years of being straight, as it were, to even get your brain to start working normally because brain function is affected by the use of methamphetamine specifically. [¶] That being said . . . I presume you haven't had access to your drug of choice, at least not in the same way that you might have when you were outside of custody. You have been in custody . . . at least four or five months. [¶] *The fact is Mr. Lusk did take the stand and tried to favor himself through his testimony, I guess is the way that I would put it*." (Italics added.)

10

charged offense does *not* constitute a finding that the defendant is factually innocent of the offense or establish that any or all of the specific elements of the offense are not true. [Citation.]" (*In re Coley* (2012) 55 Cal.4th 524,554.) "[A]n acquittal merely establishes the existence of a reasonable doubt as to guilt. Unless specific findings are made, 'the jury cannot be said to have "necessarily rejected" any facts when it returns a general verdict . . . .' [Citation.]" (*People v. Towne* (2008) 44 Cal.4th 63, 86.) Hence, a "trial court's consideration of conduct underlying counts of which the defendant has been acquitted is not inconsistent with the jury's verdict of acquittal, because a lower standard of proof applies at sentencing." (*Id*. at p. 87.)

There is no indication in this record that the trial court used sentencing to punish Lusk for going to trial.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

CROSKEY, J.

ALDRICH, J.

11