[Crim. No. 307.   Fourth Appellate District.—March 8, 1935.]

THE PEOPLE, Respondent, v. MANUEL CASTILLO, Appellant.

Theodore Gottsdanker for Appellant.

U. S. Webb, Attorney-General, and John O. Palstine, Deputy Attorney-General, for Respondent.

ALLYN, J., *pro tem.*—The defendant was convicted of the crime of rape by force and violence. The principal points relied upon for reversal are three: First, that the testimony of the prosecutrix is so inherently improbable as to render it entirely unworthy of belief and hence that the evidence is insufficient to sustain the judgment; second, that it was error to admit expert testimony to the effect that it was not inherently improbable from a medical or physiological standpoint for the defendant to have accomplished the number of sexual acts testified to by the prosecutrix within the time stated by her; and third, that the court was in error in its ruling upon defense testimony of the good reputation of defendant for chastity and morality.

The testimony of the prosecuting witness is of such a nature as to strain the credulity of an average man. She was a married woman, apparently of normal health and strength, although weakened somewhat by recent illness. She admitted having lived in adultery with two men prior to her marriage and having borne a child to each of them. By her testimony, in the early evening, while walking on the streets of the small town of Stanton, in Orange County, she was seized by an unknown man who forced her to go with him to a vacant lot in the rear of an unoccupied house. He bent her backward until she fell to the ground and there, despite her struggles and cries for help, accomplished an act

of sexual intercourse. She escaped from him but ran into a fence, was recaptured, and forced back to the same spot where the defendant in the same manner repeated his conquest. About five minutes elapsed between these two assaults. Then, not yet satisfied, the defendant, partly dragging the prosecutrix, forced her to walk about two blocks to another part of the village, where he again forced an act of intercourse upon her. These three assaults took place within the space of about twenty minutes. The prosecutrix then escaped upon the pretext that she would accept the defendant's invitation to go with him to Tia Juana, ran to her house, and made complaint to her husband. The latter, who was ill from a celebration earlier in the day, left the house and spent about five minutes in search of this man who had defiled his wife. There were marks and bruises upon witness' person when examined by a physician the next day. Three days later the prosecutrix pointed out the defendant to the arresting officers and identified him as her assailant.

However improbable the details of the story told by the prosecutrix may be, we are not prepared to say as a matter of law that the record, showing the defendant's denial of the charge and testimony in support of his defense of alibi, does not present a conflict of evidence and that it can be said that the evidence is insufficient to support the verdict. (*People* v. *Biescar*, 97 Cal. App. 205 [275 Pac. 851].) The foregoing statement of the essential details of the record is made in order to properly analyze the other specifications of error in relation to the provisions of section 4½ of article VI of the Constitution. At the base of the discussion of this problem lie considerations arising from the inherent improbability of the story of the complaining witness, and properly so, because no proposition is more firmly imbedded in our criminal jurisprudence than that there is no class of prosecutions attended with so much danger or which afford so great an opportunity for the free play of malice and private vengeance. The defendant in such a case, owing to the natural instincts and laudable sentiments of the average jury, is so disproportionately at the mercy of the prosecutrix's testimony that he should be given the full measure of every legal right in an endeavor to maintain his innocence. (*People* v. *Biescar, supra; People* v. *Baldwin,* 117 Cal. 244 [49 Pac. 186] ; *People* v. *Costa,* 24 Cal. App. 739

[142 Pac. 508]; *People* v. *Benson,* 6 Cal. 221 [65 Am. Dec. 506].)

The physician who examined the complaining witness and testified to her physical condition was permitted to answer the following hypothetical question over the general objection of the defense and the objection that the question did not contain a full statement of the evidence: ''Doctor, assuming that on or about the 16th day of September of this year, and about 9:30 in the evening, that the defendant, the man farthest from me, was going along Chester avenue in the town of Stanton, and that at about this point marked 'G' he suddenly met Mary Martinez, and took her over to this point marked 'A', which has been testified here indicates a vacant lot; that at that point the defendant had sexual intercourse with her, that he took Mary Martinez to this house, and there had an act of sexual intercourse with her by force, and that shortly thereafter she got away from the defendant, or was released from him, and ran a short distance, and ran into a fence, where the defendant overtook her, and then brought her back to this point marked 'A', and again had sexual intercourse with her, about five minutes elapsing between the first act of intercourse and the second act of intercourse; that thereafter he again took the prosecuting witness over the course indicated by this red line, up to the point marked 'H' on this diagram, People's Exhibit No. 1, and that at that time he again had intercourse with her by force, about 15 minutes elapsing between that act of intercourse and the second act of intercourse that occurred here at the point 'A'; I will ask you, doctor, if from a medical standpoint, or a physiological standpoint, there would not be anything inherently improbable from the fact of the defendant having intercourse three times within that period of time?''

It should be borne in mind that the doctor was testifying as an expert witness and not as a skilled observer. So far as the record shows she had never examined the defendant and had no knowledge of his physical or mental condition or of his sexual stamina or prowess. The question directs her opinion to the defendant and not to a matter of general medical or physiological knowledge. It is doubtful if this matter is a proper subject of expert testimony at all. (*People* v. *Benc,* 130 Cal. 159 [62 Pac. 404].) The jury were as competent to answer this question as any physician. A hypothetical question may assume any facts within the

limits of the evidence but must not be unfair or misleading. (*Treadwell* v. *Nickel,* 194 Cal. 243 [228 Pac. 25].) The vice of the question was that in effect it called for the doctor's approval of the credibility of the testimony of the prosecutrix bearing upon a crucial element of the case and further that it omitted material parts of the evidence going to the circumstances surrounding the triple rape. An answer, based upon such a question, wholly fails to meet the demands of competent evidence. (*Johnson* v. *Clarke,* 98 Cal. App. 358 [276 Pac. 1052].)

█ Three witnesses testified that the defendant's reputation for chastity and morality was good. On cross-examination each of them admitted that he had not heard the matter discussed. Thereupon, their testimony was stricken from the record and the jury instructed to disregard it. This was clearly error. (*People* v. *Hoffman,* 199 Cal. 155 [248 Pac. 504].) Was it cured by a later instruction by the court attempting to reinstate their testimony except as to their respective answers that his reputation was good, the instruction further stating that the jury might conclude that his reputation was good from the fact that these witnesses had not heard it discussed? This ruling was also erroneous. It does not necessarily follow from the fact that a witness has not heard another person's character or reputation discussed in the community in which he resides that he does not know or cannot say that he knows such person's general reputation in that community for the traits of character germane to the inquiry. The fact that no reproach has been made or known to have been uttered against the character of a person known in a community may be the very best evidence that his reputation is good. (*People* v. *Hoffman, supra; People* v. *Stennett,* 51 Cal. App. 370 [197 Pac. 372] ; *People* v. *Osterhelt,* 125 Cal. App. 723 [14 Pac. (2d) 140].) The defendant was entitled to have the answers of these witnesses go to the jury.

█ Prejudice cannot be presumed from the mere fact of error. It must affirmatively appear from a study of the record. The record in this case has been inspected minutely and we are compelled to conclude that either or both of the errors complained of, in view of the weirdly improbable testimony of the prosecutrix, were prejudicial to the substantial rights of the defendant and that probably by reason thereof a verdict of conviction resulted. It may well be that

the jurors followed the expert witness into the dim realm of medical and physiological probabilities and accepted her testimony as worthy of weight upon a matter that they were as competent as anyone to determine. It is quite apparent that the record as to the evidence of defendant's good reputation would tend to confuse even a law trained, much less a lay mind. Any reasonable man might well conclude from the action of the court in striking this testimony from the record, and later attempting to reinstate a portion of it, that the opinion of these defense witnesses as to the defendant's good reputation was of no consequence and hence entitled to no weight. Where the scales of justice are so nearly at balance, as in this case, an error that in an ordinary case would be of no consequence, can easily result in a miscarriage of justice.

The other specifications of error have been considered and found insufficient to warrant comment.

The judgment is accordingly reversed, and the cause remanded for a new trial if such action is deemed proper by the prosecuting officer.

Barnard, P. J., and Marks, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 4, 1935.