Filed 4/19/16

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | C079201 |
| Plaintiff and Respondent, | (Super. Ct. No. CR032298) |
| v. | |
| DARIO JIMENEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Lassen County, Michele Verderosa, Judge.  Affirmed.

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Keith P. Sager, Deputies Attorney General, for Plaintiff and Respondent.

"What people say behind your back is your standing in the community in which you live."[1]  On the other hand, what people do *not* say about you may also shed light on your reputation in the community and, in turn, your character.  That is the principle

---

[1]  Howe, Country Town Sayings (1911) page 20.

behind an optional part of CALCRIM No. 105 -- the standard instruction on witness credibility -- which informs the jury that "[i]f the evidence establishes that a witness's character for truthfulness has not been discussed among the people who know him or her, you may conclude from the lack of discussion that the witness's character for truthfulness is good."[2]  (CALCRIM No. 105.)

Here, a jury found defendant Dario Jimenez guilty of felony sexual penetration of an unconscious person and misdemeanor sexual battery.  On appeal, defendant contends the trial court committed prejudicial error in giving the optional instruction because it was legally erroneous, lacked evidentiary support, and created a " 'permissive inference' " and " 'false impression' " that the victim's character for truthfulness was good.  Disagreeing, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On the night of April 3, 2014, the victim, Jane Doe, was at a friend's house drinking alcohol and smoking marijuana and methamphetamine.  She had been "high" on methamphetamine for the past three days.  After a couple of hours, Jane Doe left her friend's house and walked to defendant's apartment.  Defendant was Jane Doe's uncle.

When Jane Doe arrived at defendant's apartment, she greeted him, ate some food, called a friend, and fell asleep on the couch.  She next remembered waking up in a dark bedroom on defendant's bed, on her side, with defendant behind her.  She felt his hand under her shirt and bra, touching her bare breast.  Her pants were down below her knees and she felt something inside her vagina.  When Jane Doe moved away, she heard defendant say, "It was okay."  She pushed defendant, screamed, ran outside, and went downstairs and knocked on the door of the apartment below.  Kasey Hoffman, the father of Jane Doe's niece, was staying there.  When Hoffman opened the door, Jane Doe was

_____

**2**     We will refer to this part of CALCRIM No. 105 as the optional instruction.

2

"highly distraught, very emotional . . . crying" and fell into his arms. Hoffman went upstairs to defendant's apartment to check it out, but there was no answer. About one-half hour later, Jane Doe walked home and called the police.

Officer Terra Avilla of the Susanville Police Department responded to dispatch and went to Jane Doe the next morning to take a statement. When Officer Avilla arrived she initially had trouble taking a statement. Officer Avilla recalled her state of mind was hysterical, confused, overwhelmed, and tearful. Officer Avilla called for an ambulance to take Jane Doe to the hospital. Registered nurse Maisha Smith performed a sexual assault exam and observed "about a half centimeter laceration to her labia majora at about two o'clock" and a bruise on her right shoulder blade and another bruise on her right arm.

On March 3, 2015, defendant's four-day trial began. During the prosecutor's case-in-chief, counsel called Hoffman to testify. During cross-examination, Hoffman testified that he had known Jane Doe for "[o]ver 15 years" and he had contact with her "[e]very now and then" at "family outings." Defense counsel then asked, "Did you have an occasion over the last 15 years to discuss the alleged victim's credibility for telling the truth with the family members?" Hoffman answered, "No, never, she always seems to be pretty lucid and outgoing when it comes to family outings, sober, any partaking in the events or family planned [*sic*]."

During defendant's case-in-chief, several witnesses were asked about Jane Doe's reputation for truthfulness. Laurel Loe, Jane Doe's friend of about three years, testified she did not allow Jane Doe in her home around her children because of Jane Doe's drug and alcohol use and untruths she had told. Loe said Jane Doe had a reputation within the family as a liar. Jane Doe's mother, Beatriz Jimenez, testified that her relationship with Jane Doe had become distant "because it's difficult for [Jane Doe] to tell the truth."

The trial court included the optional instruction in the court's oral jury instructions and the printed copy given to the jury. Defendant did not object.

3

The jury found defendant guilty of felony sexual penetration of an unconscious victim and misdemeanor sexual battery of a seriously disabled or medically incapacitated victim.  The trial court sentenced defendant to a three-year prison term.

Defendant timely appealed.

## DISCUSSION

### I

*Defendant's Challenge To The Optional Instruction Reviewed On Its Merits*

Defendant contends his challenge to the optional instruction is cognizable despite his lack of objection at trial.  The People disagree, arguing defendant forfeited his claim on appeal and that any possible error was harmless.

As noted, defendant did not object to the optional instruction at trial.  Nevertheless, we review the merits of his claim of error regarding the instruction to determine whether the instruction affected his substantial rights.  (See Pen. Code, § 1259.)  " '[A] defendant need not assert an objection to preserve a contention of instructional error when the error affects the defendant's "substantial rights." [Citation.] In this regard, "[t]he cases equate 'substantial rights' with reversible error" under the test stated in *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].  [Citation]' [Citations.] 'Ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim . . . .' " (*People v. Lawrence* (2009) 177 Cal.App.4th 547, 553, fn. 11.)  Therefore, we turn to the merits of defendant's arguments.

### II

*The Optional Instruction Is Not Legally Erroneous*

Defendant first contends the optional instruction is legally erroneous because it is inconsistent with the rule announced in *People v. Adams* (1902) 137 Cal. 580.  He argues that "the *Adams'* principle first presupposes the admission of good character evidence by a good character witness.  Then, but only then, may lack of discussion about bad

4

character for untruthfulness establish good character for truthfulness." We are not persuaded.

We review the validity of the jury instructions de novo. (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 831.)

In *Adams*, our Supreme Court concluded it was not error for the trial court to refuse to strike the testimony of witnesses as to the reputation of the deceased for peace and quiet when it was shown the witnesses had never heard the deceased's reputation for those particular traits discussed. (*People v. Adams*, *supra*, 137 Cal. at pp. 581-582.) The court reasoned "it is a matter of common sense, common observation, and common knowledge that a man's reputation for peace and quiet is seldom a matter of discussion until some alleged breach of the law calls up its consideration." (*Id*. at p. 582.) The court concluded such negative evidence is proper because " 'the fact [that testimony] is given in the negative form is the most cogent evidence of a man's good character and reputation, because a man's character does not get talked about until there is some fault to be found with him. It is the best evidence of his character that he is not talked about at all.' " (*Ibid*.)

In *People v. Hoffman* (1926) 199 Cal. 155, our Supreme Court followed *Adams* and concluded that the trial court erred in striking the entire testimony of two of the defendant's character witnesses. (*Hoffman*, at pp. 160-161.) During cross-examination, the prosecutor asked each character witness if he had ever discussed the defendant's reputation with anyone or heard it discussed. (*Ibid*.) After each answered in the negative, the prosecutor moved that each witness's testimony should be stricken from the record. (*Id*. at p. 161.) The trial court agreed. (*Ibid*.) Our Supreme Court disagreed, reasoning that "[t]he fact that neither witness had heard the subject discussed was some evidence of appellant's good reputation in the community where he resided." (*Ibid*.) However, the court concluded the error was harmless because defendant had produced several other character witnesses. (*Ibid.*)

5

In *People v. Osterhelt* (1932) 125 Cal.App. 723, the trial court committed prejudicial error in striking the entire testimony of the defendant's character witness when he admitted on cross-examination that he had never heard defendant's reputation discussed.  (*Id.* at p. 724.)  Citing *Hoffman*, the People conceded the point.  (*Osterhelt*, at p. 724.)

In *People v. Castillo* (1935) 5 Cal.App.2d 194, three character witnesses testified regarding the defendant's good reputation for chastity and morality.  (*Id.* at p. 198.)  Upon cross-examination, each witness admitted he had not heard the matter discussed.  (*Ibid.*)  Upon motion, their testimony was stricken from the record.  (*Ibid.*)  Citing *Hoffman* and *Osterhelt*, however, the appellate court found error, reasoning that just because a witness had not heard another person's character discussed in the community does not mean the witness necessarily had no basis to form his own opinion as to the reputation of the person in the community.  (*Castillo*, at p. 198.)  "The fact that no reproach has been made or known to have been uttered against the character of a person known in a community may be the very best evidence that his reputation is good."  (*Ibid.*)

In *People v. McAlpin* (1991) 53 Cal.3d 1289, our Supreme Court followed *Hoffman* and *Castillo* in concluding that the trial court erred in not allowing three women witnesses to testify that the defendant had a reputation for " 'normalcy in his sexual tastes' " and was a person of " 'high moral character.' "  (*McAlpin*, at pp. 1310, 1311.)  The court reasoned that the proffered testimony was relevant to a charge of child molestation and "[e]vidence that a defendant does *not* have a bad reputation for a relevant character trait is admissible as tending to show that he has a good reputation for that trait."  (*Id.* at p. 1310.)  Applying the *Watson* test, the court held the error was harmless.  (*McAlpin*, at p. 1313.)

Here, defendant's contention that a witness must testify to good character before the optional instruction can be invoked is a requirement not announced by *Adams* or supported by its progeny.  It is true that, factually, each of the foregoing cases (except

*McAlpin*) involved a character witness's testimony improperly stricken from the record. However, factual similarities do not make a rule. In none of these cases did the court modify the basic *Adams* principle. Instead, these cases reiterate the *Adams* principle that the lack of discussion in the community regarding a person's character trait may be used by the trier of fact to infer that the person's character for that trait is good. None of these cases creates, or even suggests, that before evidence of the absence of discussions about character may be considered, a witness must first provide good character testimony.

Therefore, we conclude that the optional instruction at issue in this case is legally sound, as it represents the basic principle announced in *Adams*.

III

*Relevant Evidence Supported The Court's Giving Of The Optional Instruction*

Defendant contends that even if the optional instruction is legally correct, it was unsupported by the evidence here and thus constituted error when the court gave it. We disagree.

" ' "It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference." ' " (*People v. Lamer* (2003) 110 Cal.App.4th 1463, 1469.) Consistent with this rule, the Bench Note to CALCRIM No. 105 advises the court concerning the optional instruction as follows: "Give any of the final three bracketed paragraphs *if relevant based on the evidence*." (Bench Notes to CALCRIM No. 105 (2015 ed.) p. 15, italics added.)

" 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

The testimony of prosecution witness Kasey Hoffman provided relevant evidence justifying the trial court's use of the optional instruction. Hoffman, the father of Jane

7

Doe's niece, testified that he had known Jane Doe for "[o]ver 15 years," having contact with her at family outings "now and then." During cross-examination by defense counsel, Hoffman was asked, "Did you have an occasion over the last 15 years to discuss the alleged victim's credibility for telling the truth with the family members?" Hoffman responded, "No, never, she always seems to be pretty lucid and outgoing when it comes to family outings, sober, any partaking in the events or family planned [*sic*]."

Defendant attacks the relevance of Hoffman's testimony, arguing that his answer was "not responsive." Not so. Hoffman's answer began with a direct, unambiguous "[n]o, never . . . ." The clarity of his "[n]o, never" is not necessarily undermined by the last phrase of his response commenting on Jane Doe's sobriety. The trial judge, who was in the best position to evaluate the responsiveness of Hoffman's answer, could have reasonably considered it responsive to the question asked, supporting his decision to give the optional instruction. We will not disturb the exercise of the court's sound discretion, as there was sufficient evidence in Hoffman's testimony to support it. Thus, we conclude that the court did not err in including the optional instruction because relevant evidence supported the instruction.

IV

*The Optional Instruction Did Not Create A False Impression*

Citing *People v. Batchelor* (2014) 229 Cal.App.4th 1102, defendant argues that the optional instruction created an erroneous " 'false impression' " that Jane Doe's character for truthfulness was good. We disagree.

In *Batchelor*, the defendant's two trials arose from a single drunk driving accident that resulted in the death of his passenger. (*People v. Batchelor*, *supra*, 229 Cal.App.4th at pp. 1104, 1105.) In the second trial (for second degree murder), defense counsel requested the court instruct the jury on manslaughter or instruct the jury that at his first trial the defendant had been found guilty of gross vehicular manslaughter while intoxicated. (*Id*. at p. 1115.) Without such an instruction, defense counsel argued, "the

jury faced an all-or-nothing choice." (*Ibid*.) The court declined to instruct the second jury regarding the first trial and its outcome. (*Ibid*.) Upon review, the Court of Appeal concluded "the trial court erred by instructing [the] defendant's second jury in a manner that gave the jury the false impression that [the] defendant would be left entirely unpunished for his actions if the jury did not convict him of murder." (*Id.* at p. 1117.) Finding prejudice, the court reversed the defendant's second degree murder conviction. (*Id.* at p. 1118.)

Here, the jury was not denied information that left it with a " 'false impression' " of relevant facts that might prejudice its verdict. Instead, the jury received all the proffered evidence, including Hoffman's testimony and testimony from other witnesses who did not believe Jane Doe was a truthful person. The optional instruction's effect on the jury in this case is not analogous to the failure to instruct the *Batchelor* jury regarding the first trial. Here, the jury was not misled by the optional instruction, but could consider the permissive inference in light of all the other evidence in the record. The jury was in the best position to weigh the credibility of all who testified. The optional instruction merely alerted the jury to a permissive inference it could make in light of Hoffman's testimony. Therefore, we conclude the optional instruction did not give the jury a " 'false impression.' "

V

*The Optional Instruction Was Not An Unconstitutional Permissive Inference*

Lastly, defendant contents the optional instruction was "an unconstitutional, permissive inference that violated the Fourteenth Amendment Due Process Clause" because the suggested conclusion was not one that reason and common sense justified. We disagree.

"The due process clauses of the federal Constitution . . . require a relationship between the permissively inferred fact and the proven fact on which it depends." (*People v. Mendoza* (2000) 24 Cal.4th 130, 180.) The standard of evaluating this relationship has

9

been variously described as " 'rational connection,' " " 'more likely than not,' " and " 'reasonable doubt.' " (*Barnes v. United States* (1973) 412 U.S. 837, 841-843 [37 L.Ed.2d 380, 384-386].) A permissive inference does not relieve the state's burden of persuasion to convince the jury to accept the suggested conclusion permitted by the inference. (*Francis v. Franklin* (1985) 471 U.S. 307, 314 [85 L.Ed.2d 344, 353].) "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." (*Id.* at pp. 314-315 [85 L.Ed.2d at pp. 353-354].)

Here, there was a rational connection between the proven fact (lack of discussion of character for truthfulness) and the permissive inference (the person is truthful). Therefore, the optional instruction was not an unconstitutional permissive inference because the suggested conclusion was one that reason and common sense could justify.

DISPOSITION

The judgment is affirmed.

/s/
Robie, Acting P. J.

We concur:

/s/
Butz, J.

/s/
Duarte, J.