Filed 9/1/16  P. v. Hood CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>SHADAYA HOOD,<br><br>     Defendant and Appellant. | B266771<br><br>(Los Angeles County<br>Super. Ct. No. MA065512) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Andrew E. Cooper, Judge.  Affirmed.

Narine Mkrtchyan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephanie C. Brenan, Supervising Deputy Attorney General, and Charles S. Lee, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

A jury convicted Shadaya Hood (defendant) of resisting a peace officer (Pen. Code, § 148, subd. (a)),[1] a misdemeanor. On appeal, she challenges the trial court's (1) refusal to exclude an inculpatory statement she made to the arresting deputy when that statement was disclosed after jury selection but prior to opening statements, (2) failure to instruct the jury of her privilege to use reasonable force in response to the use of unreasonable or excessive force by peace officers, and (3) review, during an in camera hearing, of law enforcement personnel records pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). We conclude there was no error, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.      Facts

In March 2015, an anonymous caller reported possible domestic violence in an apartment in Palmdale, California. Several Los Angeles County Sheriff's deputies responded to the call. When they arrived, they heard yelling coming from the apartment reported in the 911 call.

Deputy Desiree Sanchez (Deputy Sanchez) knocked on the door, and defendant answered. Deputy Sanchez heard a man yelling from somewhere in the apartment, but defendant refused to say who was yelling and started to close the door. One of the other deputies reached out his arm to stop defendant from closing the door, and Deputy Sanchez grabbed defendant's forearm and guided her out of the doorway and onto the landing outside the apartment so that the other deputies could enter to check on the yelling male.

The evidence as to what happened next is disputed. Deputy Sanchez and Deputy Terence Roberts (Deputy Roberts) testified that defendant wriggled free of Deputy Sanchez and kicked her in the stomach; Deputy Sanchez testified to the kick, while Deputy Roberts testified that he saw defendant raising her leg and saw that Deputy Sanchez's microphone was knocked loose, but did not see the kick itself. Defendant and

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

2

her "neighbor friend" testified that defendant did not kick or otherwise resist any of the deputies.

Deputy Roberts then forcibly placed defendant on the ground. He and Deputy Sanchez thereafter placed defendant in handcuffs and escorted her to one of the patrol vehicles.

## II.    Procedural History

The People charged defendant with resisting an executive officer. (§ 69.)

Defendant filed a so-called *Pitchess* motion to have the court conduct an in camera review of the personnel records of Deputies Sanchez and Roberts. The trial court found good cause to conduct an in camera hearing of both deputies' personnel records to look for prior incidents involving excessive force or dishonesty. The court conducted those in camera hearings and found no responsive records.

The matter proceeded to trial. On the morning of the fifth day of trial, after four days of jury selection and before opening statements, Deputy Sanchez told the prosecutor that defendant, while in the patrol car following her arrest, stated, "I barely touched [you]." The prosecutor immediately relayed this information to defense counsel, who requested that (1) Deputy Sanchez be precluded from testifying to this statement, (2) the jury be instructed on the prosecutor's late disclosure, and/or (3) Deputy Sanchez be subject to cross-examination regarding the late disclosure. The trial court noted that defendant's statement was not set forth in any report, and found that the prosecutor had been unaware of defendant's statement to Deputy Sanchez until Deputy Sanchez reported it to her earlier that day. The court ruled that it would not exclude the statement because any discovery violation was not willful, and declined to rule on defendant's request for an instruction "right now," but stated that the fact of late disclosure was "fair game for cross-examination." Deputy Sanchez's failure to disclose defendant's statement in her preliminary hearing testimony or prior reports was elicited during her direct and cross-examinations.

The trial court instructed the jury on the elements of resisting an executive officer (§ 69) and on its lesser-included offense, the misdemeanor crime of resisting a peace

3

officer (§ 148, subd. (a)). The court also gave most of the CALCRIM No. 2670 instruction, the standard jury instruction when an officer is engaged in the "lawful performance" of her duties.

During deliberations, the jury requested a readback of Deputy Roberts's testimony and asked the following questions: "Would pulling away be considered unlawful force? What is the description of unlawful force?" The trial court ordered the readback of testimony. The court also directed the jury to the CALCRIM No. 2670 instruction and allowed the parties to provide further argument in response to the jury's questions.

The jury acquitted defendant of resisting an executive officer, but convicted her of the misdemeanor crime of resisting a peace officer.

The trial court sentenced defendant to three years of summary probation, including 30 days in the County jail and 12 anger management classes.

Defendant timely appeals.

## DISCUSSION

### I.      Violation of the Criminal Discovery Act

Defendant argues that the trial court erred (1) by declining to hold an evidentiary hearing evaluating whether defendant's statement was more prejudicial than probative under Evidence Code section 352, and (2) in refusing to impose any sanction for the prosecutor's violation of the Criminal Discovery Act. (§ 1054 et seq.)

We reject defendant's first argument for two reasons. To begin, she forfeited the issue by not making an objection under Evidence Code section 352 and by not requesting an evidentiary hearing. (Evid. Code, § 353 [objection to evidence required]; *Mendoza v. Ramos* (2010) 182 Cal.App.4th 680, 687 [request for evidentiary hearing required].) Further, it is not reasonably probable that the trial court would have excluded defendant's statement had an objection been made because Evidence Code section 352 balances the probative value of evidence against its danger of unfair prejudice, and defendant's inculpatory statement had great probative value. Moreover, defendant has not articulated what additional evidence would have been adduced on this point at an evidentiary hearing.

4

We reject defendant's second argument, also for two reasons. First, defendant has not demonstrated that the prosecutor violated the Criminal Discovery Act. That act requires a prosecutor to disclose the "[s]tatements of all defendants" "if [such statements] [are] in the possession of the prosecuting attorney or if the prosecuting attorney knows [them] to be in the possession of the investigating agencies" either 30 days before trial or immediately upon obtaining such evidence. (§§ 1054.1, subd. (b) & 1054.7.) By its plain language, and as our Supreme Court has confirmed, this statute does *not* require the prosecutor to disclose statements that she does not possess and that she does not know the investigating agencies possess. (*People v. Whalen* (2013) 56 Cal.4th 1, 65, fn. 27 (*Whalen*) ["[n]o statutory violation appears" where "the prosecutor did not possess the undisclosed evidence and was not aware of it until it was mentioned during . . . cross-examination"]; *People v. Zambrano* (2007) 41 Cal.4th 1082, 1131, 1133 [no violation where prosecutor did not disclose letter that was not in his possession and of which he was not aware], overruled in part on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390.)[2] Because the prosecutor did not possess or know of defendant's statement to Deputy Sanchez until the fifth day of trial and immediately disclosed it to the defense upon learning of it, the prosecutor did not violate the Criminal Discovery Act.

Defendant cites *In re Littlefield* (1993) 5 Cal.4th 122 and *People v. Little* (1997) 59 Cal.App.4th 426 for the proposition that a prosecutor is obligated to disclose information of which he is unaware if it is "reasonably accessible" to him. It is unclear whether *Littlefield* and *Little* remain good law in light of our Supreme Court's subsequent interpretation of the plain language of the Criminal Discovery Act. The holdings of *Littlefield* and *Little* are, in any event, quite narrow: *Littlefield* held that a defense attorney could not refuse to provide the addresses for defense witnesses by disclaiming

---

**2**      By contrast, a prosecutor is required by due process, under *Brady v. Maryland* (1963) 373 U.S. 83, to disclose to the defense any favorable, material evidence in the possession of investigators whether or not the prosecutor knows they possess it. (*Whalen*, *supra*, 56 Cal.4th at p. 64.) However, *Brady* is not an issue in this case because the undisclosed evidence is defendant's *inculpatory* statement, which is not "favorable" within the meaning of *Brady*. (*People v. Verdugo* (2010) 50 Cal.4th 263, 281.)

knowledge of those addresses (*Littlefield*, at pp. 135-136) and *Little* held that a prosecutor could not refuse to provide a witness's "rap sheet" based on his lack of personal knowledge (*Little*, at p. 433). Neither case purported to alter the principle that "the prosecution has no *general duty* to seek out, obtain, and disclose all evidence that might be beneficial to the defense" (*Littlefield*, at p. 135), and thus neither case obligates a prosecutor to re-interview her witnesses looking for possible statements omitted from the witness's reports. The trial court's ruling is unclear as to whether it found any Criminal Discovery Act violation, but substantial evidence does not support a finding that the prosecutor did. (*People v. Riggs* (2008) 44 Cal.4th 248, 306 (*Riggs*).)

Second, even if the prosecutor violated the Criminal Discovery Act, the trial court did not abuse its discretion in electing to allow cross-examination regarding the late disclosure rather than to exclude defendant's statement or to give a jury instruction regarding late disclosure. (*People v. Bowles* (2011) 198 Cal.App.4th 318, 325-326.) Preclusion of evidence is a penalty of last resort, available "only if all other sanctions have been exhausted." (§ 1054.5, subd. (c).) The court did not abuse its discretion in determining that the inadvertent late disclosure of defendant's statement did not warrant excluding that statement from evidence, particularly because cross-examination was an adequate remedy. The Criminal Discovery Act also empowers a court to "advise the jury of any failure or refusal to disclose and of any untimely disclosure." (§ 1054.5, subd. (b).) It is unclear whether defendant may press this as a viable option on appeal because the court expressly held off ruling on this sanction, and defendant never renewed her objection or pressed for a ruling. (See *People v. Valdez* (2012) 55 Cal.4th 82, 122 ["[b]ecause defendant failed to pursue and obtain a ruling on these objections, he may not raise them on appeal"].) However, even if we deem the issue to be preserved, the California courts have expressed significant doubts about the legality of instructions informing jurors of discovery misconduct in criminal cases (e.g., *People v. Lawson* (2005) 131 Cal.App.4th 1242; *People v. Saucedo* (2004) 121 Cal.App.4th 937; *People v. Cabral* (2004) 121 Cal.App.4th 748; *People v. Bell* (2004) 118 Cal.App.4th 249), and our Supreme Court has expressly declined to opine on the legality of using either of the

6

current standard jury instructions—CALJIC No. 2.28 and CALCRIM No. 306—for discovery misconduct (*Riggs*, *supra*, 44 Cal.4th at pp. 306-307). The trial court's decision to allow cross-examination rather than give a jury instruction of questionable legality (and that may have injected error into the trial) was not an abuse of discretion.

## II. Instructional Error

As noted above, the trial court instructed the jury on the charged crime of resisting an executive officer (§ 69) and its lesser-included crime of resisting a peace officer (§ 148, subd. (a)). Using the standard CALCRIM instructions, the court informed the jury that the People had to prove, for either crime, that Deputy Sanchez was "lawfully performing or attempting to perform her duties as a peace officer," and that defendant either "unlawfully used force to resist" her (for the section 69 crime) or "willfully resisted" her (for the section 148 crime). The court further defined what it meant for a peace officer to be "lawfully performing" her duties using the CALCRIM No. 2670 instruction, explaining (1) that "[a] peace officer may use reasonable force to arrest or detain someone, to prevent escape, or overcome resistance, or in self-defense," (2) that that the jury can "not find the defendant guilty of resisting arrest or detention if the arrest or detention was unlawful," and (3) that, even "when making or attempting to make an otherwise lawful arrest or detention," "[a] peace officer is not lawfully performing his or her duties if he or she is using unreasonable or excessive force."

Defendant argues that the trial court erred by not also giving the following, optional language from the CALCRIM No. 2670 instruction: "If a peace officer uses unreasonable or excessive force while [arresting or detaining] a person, that person may lawfully use reasonable force to defend himself or herself. [¶] A person being arrested uses reasonable force when he or she: (1) uses that degree of force that he or she actually believes is reasonably necessary to protect himself or herself from the officer's use of unreasonable or excessive force; and (2) uses no more force than a reasonable person in the same situation would believe is necessary for his or her protection." (CALCRIM No. 2670.) We review de novo defendant's challenge to the jury instructions. (*People v. Jimenez* (2016) 246 Cal.App.4th 726, 731.)

7

A trial court has a duty, on its own, to "'instruct [the jury] on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case.'" (*People v. Townsel* (2016) 63 Cal.4th 25, 58, quoting *People v. Martinez* (2010) 47 Cal.4th 911, 953.) "That duty extends to instructions on the defendant's theory of the case, 'including instructions "as to defenses '"that the defendant is relying on . . . , or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.'"'" (*Townsel*, at p. 58, quoting *People v. Abilez* (2007) 41 Cal.4th 472, 517.)

By its plain language, the instruction defendant says on appeal that the trial court should have given applies when a *defendant* uses "reasonable force" to defend herself in response to a peace officer's use of "unreasonable or excessive force while arresting or detaining" her. However, at trial, both defendant and her neighbor testified that the defendant never used any force at all to resist the deputies. Thus, an instruction justifying a *defendant's* use of reasonable force is factually inconsistent with her position at trial that she never resorted to force at all.

Defendant points to the jury's question asking for further definition of the concept of "unlawful force" and for clarification as to whether "pulling away [would] be considered unlawful force." Defendant argues that the note suggests that the jury was concerned about whether defendant could use "reasonable force" in resisting the deputies' use of "excessive or unreasonable" force. We disagree. As explained above, the concept of "unlawful force" is what separates the felony of resisting an executive officer from the misdemeanor of resisting a peace officer. (Compare § 69 with § 148, subd. (a).) It focuses on whether defendant used "unlawful force," not on whether she used "reasonable force" and was justified in doing so.

Consequently, the court did not err in declining to give an instruction that was inconsistent with the defense presented at trial.

## III.    *Pitchess* **Review**

When the trial court conducts an in camera review of potentially discoverable information from an officer's personnel files, it must "make a record of what documents

it examined before ruling on the *Pitchess* motion." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229.) The ruling will be upheld absent an abuse of discretion. (*Id.* at p. 1228.) We have independently reviewed the sealed reporter's transcript of the in camera hearing in which the trial court described each document examined in some detail. We conclude that the court properly exercised its discretion in denying discovery.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST