Filed 11/30/20  P. v. Lopez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C086729 |
| Plaintiff and Respondent, | (Super. Ct. No. CR177254) |
| v. | |
| DANIEL LOPEZ, | |
| Defendant and Appellant. | |

Following dinner and an argument with his wife, defendant Daniel Lopez drove off to a friend's house.  Defendant ran a stop sign, attracting the attention of a sheriff's deputy.  In the ensuing pursuit, defendant crossed into oncoming traffic along a country road about 17 times.  A jury convicted defendant of reckless driving, misdemeanor driving under the influence, misdemeanor driving with a blood alcohol content (BAC) and misdemeanor driving with a suspended license.  Sentenced to 150 days in jail and five years of probation, defendant appeals, challenging the sufficiency of the evidence and instructional error.  We shall affirm the judgment.

1

# FACTUAL AND PROCEDURAL BACKGROUND

An information charged defendant with evading a police officer with reckless driving, count 1 (Veh. Code, § 2800.2); evading a police officer while driving in the opposite direction, count 2 (Veh. Code, § 2800.4); misdemeanor driving under the influence of alcohol, count 3 (Veh. Code, § 23152, subd. (a)); misdemeanor driving with a BAC of .08 or above, count 4 (Veh. Code, § 23152, subd. (b)); and misdemeanor driving with a suspended license, count 5 (Veh. Code, § 14601.2, subd. (a)).

The information also alleged defendant was previously convicted of a serious felony within the meaning of Penal Code sections 667, subdivision (c) and 667, subdivision (e)(1) and that he served a prior prison term (Pen. Code, § 667.5, subd. (b)).[1]

The following evidence was introduced at the jury trial.

**The Incident**

In November 2017 defendant and his wife had dinner at a sports bar around 7:00 p.m. Defendant drank two beers and a mixed drink. His wife drove them home an hour to an hour and a half later.

Shortly after 9:00 p.m., Sheriff's Deputy Andre Stafford saw a white Chevy Malibu run a stop sign on a country road. Stafford activated his overhead lights and followed defendant, who kept driving. Defendant began "fumbling around" inside his car in the back seat and on the passenger side.

Although Deputy Stafford activated his siren, defendant failed to stop. Stafford summoned back up. Defendant drove on, crossing into the northbound lanes about 17 times, forcing oncoming traffic to pull over to avoid a collision. Defendant ran two or three more stop signs. The speed limit on the country road was 55 miles per hour;

---

[1] All further statutory references are to the Penal Code unless otherwise designated.

defendant's speed ranged from 60 to 83 miles per hour. Stafford estimated defendant committed between 17 and 20 moving violations as he sped along.

Defendant threw something out of the car window, which officers later identified as a can of Modelo beer. Finally, after 15 minutes of pursuit, defendant stopped.

**The Aftermath**

Deputy Stafford ordered defendant at gunpoint to exit the car with his hands in the air. Defendant complied and did not try to flee. Defendant was on the phone with his wife and Stafford told him to put the phone down.

Deputy Stafford's search of defendant's records revealed he was on parole as of February 21, 2017, and his driver's license had been suspended as of December 17, 2012. Sergeant Charles Hoyt arrived and assisted "in conducting a high risk felony traffic stop" and "with clearing the trunk area at gunpoint." Hoyt discovered an open box of Modelo beer in defendant's trunk.

Deputy Stafford arrested defendant around 9:30 p.m. Defendant seemed agitated in the patrol car. As deputies transported defendant he tried to kick out a car window and hurled "vulgar slang" at them.

**DUI Evaluation**

Deputy Stafford detected the odor of alcohol. Deputy Matthew Milliron spoke with defendant around 10:15 p.m. and also detected the smell of alcohol. Milliron observed defendant's eyes were red and watery and his eyelids drooped. In Milliron's opinion, defendant's "overall reactions seemed to be delayed."

While defendant sat in the patrol car, Deputy Milliron conducted a DUI evaluation. He tested defendant's right eye for horizontal gaze nystagmus (HGN) and found signs of intoxication. However, defendant refused to allow Milliron to test the other eye. Defendant's lack of cooperation prevented any other field sobriety tests.

Deputy Milliron performed two preliminary alcohol screening tests (PAS) using a breathalyzer. The first sample, taken at 10:34 p.m., was 0.084 percent. The second sample, taken at 10:41 p.m., was 0.087 percent.

A few minutes later, Sergeant Hoyt smelled alcohol on defendant's breath and conducted two more breathalyzer tests, with defendant's cooperation. Hoyt observed defendant for 15 minutes prior to administering the tests and did not see defendant burp, vomit, or do anything that might impact the results. The first test, taken at 10:55 p.m., registered 0.10 percent. The second, taken at 10:57 p.m., also registered 0.10 percent. When deputies took defendant to jail, he did not stumble or resist.

**Expert Testimony**

A criminalist provided expert testimony regarding forensic alcohol analysis and the effects of alcohol on the body. The criminalist employed retrograde extrapolation, a scientific method used to estimate an individual's BAC at a certain time. She stated retrograde extrapolation has "been scientifically proven to be a good estimation." Using this method, the criminalist estimated defendant's BAC at 9:20 p.m., the time when defendant had been driving. She based the estimation on his BAC of 0.10 percent at 10:55 and 10:57 p.m.

Assuming the alcohol defendant drank had been fully absorbed into his bloodstream at that time, the criminalist estimated defendant's BAC was between 0.115 to 0.137 at 9:20 p.m, In her expert opinion, a driver would not be able to safely operate a vehicle with that blood alcohol level.

**Defense Case**

Defendant testified on his own behalf. He acknowledged he was on parole on the night of the incident, and the conditions of parole included a prohibition on drinking alcohol. He also admitted having a suspended license on the night of the incident.

4

At dinner that night, defendant ate three tacos and drank two Modelos and a Jack and Coke. After fighting with his wife, defendant drove to a friend's house. On the way he bought a 12-pack of beer and took a sip from one. He drove on, but did not drink again. Defendant admitted throwing a can of beer out the window.

As defendant drove, he swerved and ran a stop sign because the rug on the car floor slipped and prevented him from breaking. While talking on the phone with his wife, defendant swerved and crossed into oncoming traffic. He ran another stop sign because he was afraid the patrol car behind him might hit him.

Defendant did not realize he was speeding at 80 miles per hour or that he had run one of the stop signs. Although he knew officers were attempting to pull him over, defendant kept driving. Finally, defendant realized he should pull over.

When he was in the back seat of the patrol car, Sergeant Hoyt "tapped on the window with his flashlight, flashed it in [hi]s face and laughed." Defendant kicked the window of the patrol car to get Hoyt's attention. He asked Hoyt why he was laughing at him and Hoyt apologized. Defendant admitted alcohol might have impaired his ability to drive.

**Verdict and Sentencing**

The jury found defendant not guilty of counts 1 and 2 and found him guilty on counts 3, 4, 5, and reckless driving (Veh. Code, § 23103), the lesser included offense of count 1. The trial court found both allegations true.

The court sentenced defendant to 150 days in jail and five years of probation: for count 1, 30 days in jail, stayed (§ 654): for count 3, 150 days in jail; for count 4, 150 days in jail, stayed (§ 654): and for count 5, 30 days in jail, stayed (§ 654). Defendant filed a timely notice of appeal.

## DISCUSSION

## I

### *Sufficiency of the Evidence*

Defendant challenges the sufficiency of the evidence to support his conviction for driving with a BAC of 0.08 percent or more.  He disputes the admission of the criminalist's expert testimony, arguing that without it the evidence is insufficient.

**Standard of Review**

In reviewing a defendant's challenge to the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence.  Substantial evidence is evidence that is credible, reasonable, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

We do not reassess the credibility of witnesses, and we draw all inferences from the evidence that supports the jury's verdict.  (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.)  Unless the testimony of a single witness is physically impossible or inherently improbable, it is sufficient to support a conviction.  (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Vehicle Code section 23152, subdivision (b), prohibits "a person who has a 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle."  The statute creates a permissive inference of a BAC at or above 0.08 percent "if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving."  (Veh. Code, § 23152, subd. (b).)  In addition, "circumstantial evidence of intoxication, while not dispositive, may be relevant" in interpreting a driver's BAC.  (*Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1215 (*Coffey*).)

**Discussion**

      In essence, defendant argues the criminalist's testimony should be rejected. Defendant summarizes the test results, noting he was pulled over at about 9:28 p.m. Officers performed the PAS tests at 10:34 p.m. and 10:41 p.m., yielding results of 0.84 and 0.87. Approximately twenty minutes later officers again performed PAS tests which yielded results of 0.10. According to defendant, "Viewed together, [defendant's] test results show that his blood alcohol level was rising. The critical question is whether the evidence supports the inference that [defendant's] blood alcohol level rose to 0.08 before Deputy Stafford pulled him over."

      Defendant faults the criminalist for using "retrograde extrapolation, which required the assumption that all of the alcohol appellant ingested had been fully absorbed into his bloodstream by 9:20 p.m. Drinking with food slows alcohol absorption." Therefore, the court should not consider the criminalist's testimony.

      We disagree. The criminalist provided expert testimony on the ramifications of the tests. She employed retrograde extrapolation, using the latter results in calculating defendant's BAC to have been between 0.115 to 0.137 percent at 9:20 p.m. The criminalist's testimony was based on a hypothetical posed by the prosecution, which assumed that the alcohol was fully absorbed into defendant's bloodstream by 9:20 p.m. Defendant and his wife testified defendant drank two beers and a mixed drink during dinner between 7:00 p.m. and 8:30 p.m. Defendant testified he drank a single sip of beer before he started driving.

      Under CALCRIM No. 332, "An expert witness may be asked a hypothetical question. A hypothetical question asks the witness to assume certain facts are true and to give an opinion based on the assumed facts. It is up to you to decide whether an assumed fact has been proved. If you conclude that an assumed fact is not true, consider the effect of the expert's reliance on that fact in evaluating the expert's opinion." Given the

7

evidence, the jury could conclude the criminalist's estimate of defendant's BAC at the time the deputy pulled him over was 0.08 or higher.

## II

### *Instructional Error: Permissive Inference*

Defendant argues CALCRIM No. 2111 reduced the prosecution's burden of proof, violating his right to due process. According to defendant, the permissive inference under the instruction was the only proof that he was driving with a BAC of 0.08 or more. "When a permissive inference is the only proof of a fact, the connection between the proved fact and the inferred fact must be established beyond a reasonable doubt to pass constitutional muster. It was not in this case."

**Background**

For count 4, the court gave CALCRIM No. 2111: "If the People have proved beyond a reasonable doubt that a sample of the defendant's breath was taken within three hours of the defendant's driving and a chemical analysis of the sample showed a blood alcohol level of 0.08 percent or more, you may, but are not required to, conclude that the defendant's blood alcohol level was 0.08 percent or more at the time of the alleged offense."

The parties agree we review jury instructions de novo. (*People v. Jimenez* (2016) 246 Cal.App.4th 726, 731.)

In the appropriate case, permissive inferences do not shift the prosecution's burden of proof. Because the jury may or may not choose to rely on them, permissive inferences do not operate in an unconstitutional manner. However, a permissive inference may shift the burden of proof if, under the facts of the case, there is no possibility the jury could make the connection permitted by the inference. (*People v. Beltran* (2007) 157 Cal.App.4th 235, 244-245 (*Beltran*).)

8

If a permissive inference is not the only evidence offered of a defendant's guilt, "there need . . . only [be] a ' "substantial assurance that the presumed fact is *more likely than not* to flow from the proved fact on which it is made to depend." ' " (*Beltran, supra*, 157 Cal.App.4th at p. 245.) Otherwise, "the connection between the proved fact and the inferred fact [must] be established beyond a reasonable doubt . . . ." (*Ibid.*)

**Discussion**

According to defendant, the permissive inference was the only proof defendant was driving with a BAC of 0.08 or more, requiring that it be proved beyond a reasonable doubt, which it was not. Therefore, the instruction improperly lowered the prosecution's burden of proof.

We disagree. The prosecution offered other evidence that defendant was intoxicated when stopped by the police. Deputy Stafford's testimony, supported by the dashboard camera video, established that prior to being pulled over, defendant committed numerous moving violations, many of them extremely dangerous. Defendant smelled of alcohol and showed signs of intoxication during HGN testing. He refused to cooperate with the officers and tried to kick out the window of the patrol car. Defendant also admitted his drinking that evening affected his driving. We find no error in the court's giving of CALCRIM No. 2111.

### III

### *Instructional Error: Instruction on Reckless Driving*

Finally, defendant contends the trial court's instruction on reckless driving violated his due process rights because it is not a lesser included offense of count 1, evading a peace officer with reckless driving. Defendant acknowledges that, under *People v. Toro* (1989) 47 Cal.3d 966 (*Toro*), disapproved on another ground in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, footnote 3, his failure to object waives the issue. He raises the issue "so he may pursue it in the California Supreme Court."

In *Toro*, the defendant was charged with attempted murder. The court instructed on battery with serious bodily injury as a lesser included offense. The Supreme Court found battery with serious bodily injury was not a lesser included offense of attempted murder, and held the defendant's "failure to promptly object [to the jury instruction] will be regarded as a consent to the new charge and a waiver of any objection based on lack of notice." (*Toro, supra*, 47 Cal.3d at p. 971-972, 976.)

Here, defendant failed to object to the jury instruction on reckless driving as an uncharged offense, waiving the issue. However, defendant contends *Toro* conflicts with section 1259, which gives "an appellate court statutory authority to review any jury instruction 'even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby.' " (*Toro, supra*, 47 Cal.3d at p. 977, quoting § 1259.) *Toro* addressed section 1259, concluding the failure to object does not bar review of the instruction, but does bar a contention based on a lack of notice. (*Ibid.*) Under *Toro*, defendant waived challenging the instruction based on a lack of notice.

## DISPOSITION

The judgment is affirmed.

/s/
RAYE, P. J.

We concur:

/s/
ROBIE, J.

/s/
MAURO, J.

10